Michael JOYCE, Appellant

v.

ERIE INSURANCE EXCHANGE/Erie Insurance Company also d/b/a/ Erie Insurance Agency, Inc., Erie Insurance, Erie Insurance Group and also State Farm Mutual Automobile Insurance Company And Amber Cooper and Brian Cooper, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 9, 2013.

Filed July 9, 2013.

Alexander H. Lindsay, Jr., Butler, for appellant.

Robert E. Dapper, Jr., Pittsburgh, for Erie Ins., Erie Ins. Agency, Inc., Erie Ins. Exchange and Erie Ins. Company and Erie Ins. Group, appellees.

Daniel L. Rivetti, Pittsburgh, for State Farm, appellee.

BEFORE: ALLEN, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:

Michael Joyce ("Appellant") appeals from a January 23, 2012 order of the Court of Common Pleas of Erie County ("the trial court"). That order sustained preliminary objections filed by Appellee Erie Insurance Exchange ("Erie Insurance") and by Appellee State Farm Mutual Automobile Insurance Company ("State Farm") and dismissed Appellant's complaint. We affirm.

The trial court summarized the case history as follows:

[Appellant] is a former judge of the Pennsylvania Superior Court. On August 10, 2001, [Appellant] was involved in an automobile accident in which the vehicle he was driving was hit from behind by a vehicle owned and operated by Amber Cooper. At the time of the accident, Amber Cooper was insured by State Farm, and [Appellant] was insured by Erie Insurance. [Appellant's] coverage with Erie Insurance included underinsured insurance coverage in the amount of $500,000. Amber Cooper was insured through State Farm for $50,000. [Appellant] filed a claim with State Farm, and on September 4, 2002, State Farm issued a check for $50,000 to [Appellant], and [Appellant] executed a Release. [Appellant] submitted a claim to Erie Insurance, and on November 26, 2002, Erie Insurance issued a check for $390,000 to [Appellant], and [Appellant] executed a Release. On August 15, 2007, a federal grand jury returned an indictment against [Appellant] alleging violations of 18 U.S.C. §§ 1341 (mail fraud) and 1957 (money laundering). The factual basis of these counts relates to the conduct of [Appellant] after the motor vehicle accident, including his claims of injuries, pain, and suffering which he made to Erie Insurance and State Farm. A guilty verdict on eight counts, including two counts of mail fraud and six counts of money laundering, was returned on November 19, 2008 by a federal jury in the United States District Court for the Western District of Pennsylvania. Erie Insurance and State Farm submitted victim impact

statements to the federal court prior to [Appellant's] sentencing. [Appellant] was ordered to pay restitution in the amount of $390,000 to Erie Insurance and $50,000 to State Farm. The restitution was set by the Court to reimburse the declared victims for the funds which they had paid out as a product of the mail fraud of which the jurors had found [Appellant] guilty. [Appellant] filed a Motion to Dismiss and/or For Judgment of Acquittal and a Motion for New Trial in the Western District Court of Pennsylvania. These motions were denied by the Western District Court. *U.S. v. Joyce*, No. 07–31, 2009 WL 578544 (W.D.Penn. March 5, 2009). [Appellant] next filed an appeal of his conviction and sentence with the Third Circuit Court of Appeals, both of which were denied. *Joyce v. U.S.*, 373 Fed.Appx. 172 (3d Cir.2010).

Trial Court Memorandum & Order ("T.C.M."), 1/25/2012, at 2–3 (footnote omitted).

The civil action that gives rise to this appeal was initiated soon after the federal criminal matter concluded. In a complaint filed on March 21, 2011, Appellant alleged that Erie Insurance schemed to defraud Appellant, as well as the state and federal governments, and "the citizens of the Commonwealth of Pennsylvania". Complaint at 20–21 ¶ 120. Appellant pled the following theory: Because Erie Insurance deemed Appellant "favorable to the insurance industry", Erie Insurance contrived to settle Appellant's claim "as expeditiously as possible and as favorably as possible to [Appellant]" without requesting that Appellant provide a statement under oath or submit to an independent medical examination. Complaint at 20–22 ¶¶ 123–27. Appellant contended that, as part of the plan, Erie Insurance required Appellant to sign a confidentiality agreement that prevented Appellant from disclosing the amount of the settlement. *Id.* at 23 ¶ 132. Appellant alleged that, by this scheme and artifice to defraud, Erie Insurance sought to "obtain" an industry-friendly judge who would be both "secretly beholden" to Erie Insurance and unable to disclose the settlement to litigants. *Id.* at 23 ¶ 133. According to the complaint, Erie Insurance then diverted attention from its own unlawful scheme by falsely holding itself out as a victim during the ensuing criminal investigation, and the federal government relied upon Erie Insurance's fraudulent misrepresentations. *Id.* at 24–25 ¶¶ 138–44. Appellant further alleged that "[t]he Government's reliance on [Erie Insurance's] misrepresentations and conduct was a factual cause of the harm suffered by [Appellant]." *Id.* at 25 ¶ 145. Appellant made similar allegations against State Farm. *Id.* at 31–33 ¶¶ 170–83. Appellant sought to recover the $390,000 and $50,000 that he was ordered to pay the insurance carriers in restitution.

The civil litigation ensued. The trial court summarized the procedural history as follows:

A Praecipe for Writ of Summons was initially filed on October 22, 2010 in the Civil Division of the Court of Common Pleas of Allegheny County by [Appellant]. The Writ was reissued on November 16, 2010, December 16, 2010, January 18, 2011, and February 17, 2011. Erie Insurance filed a Praecipe for Rule to File Complaint on February 28, 2011. On March 21, 2011, [Appellant] filed a Complaint. [Appellant's] Complaint asserts eight claims for relief. Specifically, [Appellant] claims fraud at Court I against Erie Insurance; insurance bad faith pursuant to 42 Pa.C.S.A. § 8371 at Count II against Erie Insurance; breach of contract at Count III against Erie Insurance; breach of contractual duty of good faith

at Count IV against Erie Insurance; fraud at Count V against State Farm; breach of contract at Count VI against State Farm and [Appellees] Amber and Brian Cooper; unjust enrichment at Count VII against State Farm and [Appellees] Amber and Brian Cooper; and unjust enrichment at Count VII against Erie Insurance. Erie Insurance filed Preliminary Objections To [Appellant's] Complaint on April 12, 2011 with a supporting brief. On the same date, Erie Insurance also filed a Petition to Transfer Venue. State Farm filed a Motion to Sever on April 12, 2011, which was denied by The Honorable R. Stanton Wettick on the same date as premature. [Appellant] filed an Answer to Petition to Transfer Venue on May 2, 2011. [Appellant] filed a Reply to [Erie Insurance's] Preliminary Objections on May 3, 2011. On May 5, 2011, State Farm filed Preliminary Objections in the Form of Demurrers with a supporting brief. By Order dated June 3, 2011, The Honorable Ronald W. Folino ordered the parties to "create an evidentiary record by stipulation, deposition, or as agreed to by the parties." The Stipulation of Undisputed Facts Regarding Petition to Transfer Venue was filed on July 5, 2011. Judge Folino transferred this matter to the Erie County Court of Common Pleas on September 6, 2011. The Allegheny Court Department of Court Records transferred this matter to Erie County on October 11, 2011. On October 31, 2011, State Farm filed a second Motion to Sever. On December 23, 2011, [Appellant] filed a Brief in Reply to State Farm's Motion to Sever, Brief in Opposition to [Erie Insurance's] Preliminary Objections, and a Brief in Opposition to State Farm's Preliminary Objections. Oral arguments were held on January 6, 2012 regarding State Farm's Motion to Sever and Preliminary Objections and Erie Insurance's Preliminary Objections.

T.C.M. at 1–2.

The trial court denied the motion to sever, but sustained the preliminary objections. The court further dismissed the complaint and entered judgment in favor of Appellees. This appeal followed.[1]

Appellant raises five issues for our review:

I. Did the Lower Court err in finding the application of the doctrine of *in pari delicto* dismissing [*sic*] [Appellant's] Complaint?

II. Did the Lower Court err in finding [Appellant] did not state a valid claim for fraud on the part of Erie Insurance?

III. Did the Lower Court err in finding that [Appellant] has not stated a claim for which relief can be granted in Count II, Insurance Bad Faith pursuant to 42 Pa. C.S.A. § 8371?

IV. Did the Lower Court err in finding that [State Farm] fully complied with its obligation to [Appellant's] signed release and therefore could not set forth a breach of contract claim [*sic*]?

V. Did the Lower Court err in finding that [Appellant] did not properly

---

1. On February 21, 2012, Appellant filed his notice of appeal. On February 28, 2012, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. On April 25, 2012, the trial court filed its Rule 1925(a) opinion, which incorporated its January 25, 2012 memorandum.

plead a claim for unjust enrichment against [State Farm]?

Appellant's Brief at 5.

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court. Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa.Super.2011).

■ Appellant first challenges the trial court's invocation and use of the *in pari delicto* doctrine to sustain Erie Insurance's preliminary objections and dismiss the complaint against that Appellee.[2] "The common law doctrine of *in pari delicto* ('in equal fault') is an application of the principle that no court will lend its aid to a man who grounds his actions upon an immoral or illegal act." *Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick & Cabot*, 312 Pa.Super. 125, 458 A.2d 545, 548 (1983) (quotation marks omitted). Traditionally, a two-step analysis was used. *Id.* at 549.[3] First, the court sought to determine whether the parties were in equal fault, or, in some formulations, "substantially equal" fault. *Id.* at 550 (quoting *Tarasi v. Pittsburgh National Bank*, 555 F.2d 1152, 1162 (3d Cir.1977)). Next, the court inquired "whether there were considerations of public policy such that, despite their equal fault, the plaintiffs should be entitled to recover their losses from the defendants." *Id.* at 550. As we discuss below, the *Feld* Court dispensed with this two-part test, in favor of a unitary inquiry.

Appellant argues that the doctrine of *in pari delicto* is inapplicable here. Appellant avers that his complaint did not allege any wrongdoing on his part and that the doctrine requires both parties to be at fault. Appellant maintains that his federal conviction does not involve the same incident and activities that are at issue in his civil litigation. Accordingly, Appellant asserts, citing *Harter v. Reliance Insurance*

---

**2.** The trial court applied *in pari delicto* only to the claims that Appellant made against Erie Insurance. The trial court did not apply the doctrine to the claims asserted against State Farm. *See* T.C.M. at 8 (*"In pari delicto* cannot be applied to [Appellant's] claims against State Farm. The verdict slips in the federal district court case do not refer to any letter or document mailed to any agent or officer of State Farm. Therefore, it cannot be said that the issues in the federal district court criminal trial were the same as those which are at issue in this civil action. Under *Feld [& Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick & Cabot*, 312 Pa.Super. 125, 458 A.2d 545, 548

(1983),] and *Harter [v. Reliance Insurance Co.*, 386 Pa.Super. 14, 562 A.2d 330 (1989)], this Court cannot consider [Appellant's] criminal conviction as proof of any illegal or immoral act by [Appellant] against State Farm.").

**3.** The *Feld* Court noted that, in some simple cases, such as where the parties entered into identical illegal agreements and committed identical illegal acts, only a one-step analysis (a finding of equal fault in an illegal act) is necessary. *Id.* at 550 (citing *Jenkins v. Fowler*, 24 Pa. 308 (1859)).

*Co.*, 386 Pa.Super. 14, 562 A.2d 330 (1989), *in pari delicto* cannot apply. Appellant argues as well that the federal jury did not need to find that Erie Insurance was a "victim" of Appellant in order to convict Appellant of mail fraud. Appellant contends that, because Erie Insurance was not a victim, the trial court cannot find that Appellant engaged in an illegal act against Erie Insurance, thus barring application of the *in pari delicto* doctrine. Appellant's Brief at 22–29.

■ Erie Insurance responds that the claims Appellant asserts in his complaint are based upon precisely the same actions that resulted in his federal conviction. "[I]t is inescapable," Erie Insurance argues, "that [Appellant] was found beyond a reasonable doubt to have sought to obtain money, with the specific intent to defraud by knowingly devising and engaging in a scheme and artifice to defraud, that such fraud was directed at Erie, and that as a result of that fraud the federal court required Joyce to repay Erie the funds that Joyce had illegally and fraudulently obtained from Erie." Erie Insurance's Brief at 11.[4] Erie Insurance maintains that, because Appellant's civil claims against Erie Insurance are "inextricably intertwined" with Appellant's fraudulent acts, the *in pari delicto* doctrine was applied appropriately. *Id.* at 11–18.[5]

Noting that Appellant himself incorporated the allegations of his federal conviction in his complaint, the trial court concluded that it was entitled to take judicial notice of that conviction. T.C.M. at 3–4. The court then applied *in pari delicto*. Relying upon *Feld*, the trial court eschewed the traditional *in pari delicto* two-step analysis and focused upon the general principle that "no court will lend its aid to a man who grounds his action upon an immoral or illegal act." T.C.M. at 5 (quoting *Feld*, 458 A.2d at 552). The trial court reasoned that, if the issue in Appellant's federal conviction was the same as the issue in the instant civil matter, Appellant would be precluded from denying his fraudulent activity. The trial court found that the mail fraud conviction proved that Appellant "devised a scheme ... to defraud Erie Insurance, he acted with the specific intent to defraud Erie Insurance, and he used the mails to advance ... that scheme." T.C.M. at 7. The court then determined that Appellant's claims in his complaint were based upon payment of insurance proceeds that Appellant acquired through his illegal conduct. Because Appellant could not state a claim that was not grounded in his illegal conduct, he could not state a valid cause of action. Consequently, the trial court dismissed all the claims against Erie Insurance, with prejudice. T.C.M. at 7–8.

■ As the trial court relied upon *Feld*, we begin our review there. In *Feld*, the

---

**4.** Erie Insurance further asserts:

> *In pari delicto* and its principles require only that Joyce base his claim on his illegal or immoral act, which he has, as each of the claims raised by Joyce pertains to the fraudulent insurance claim submitted by Joyce to Erie. However, even if *in pari delicto* required Erie to be the "victim" of Joyce's fraud, Joyce was convicted of mail fraud based on evidence that the Third Circuit Court of Appeals held sufficient to establish Joyce's "specific intent to defraud Erie."

Erie Insurance's Brief at 11–12 (citation omitted).

**5.** Generally, the doctrine of *in pari delicto* is applied when both parties are at fault. *Feld*, 458 A.2d at 548. While Erie Insurance recognizes that the standard applicable to preliminary objections required the trial court to assume the allegations against it were true, Erie Insurance vehemently denies any fault. Erie Insurance's Brief at 12–13, n.3, 4, 5.

appellants operated a retail men's clothing business and were faced with the prospect of the unionization of their warehouse employees. *Id.* at 547. Opposed to unionization, the appellants sought legal advice from their lawyers (the appellees) regarding how to prevent it. Upon advice of the appellees, the appellants fired workers sympathetic to the union, falsely designated management staff members as warehouse employees, lied under oath at hearings before the National Labor Relations Board, and attempted to bribe an employee to prevent his testimony before that Board. The appellants were "indicted for perjury and interference with an agent of the National Labor Relations Board," and each was convicted. *Id.* The appellants then filed a civil action against appellees, alleging malpractice, infliction of emotional distress, deceit, and breach of contract. *Id.* at 548.

In *Feld,* our Court decided to depart from the two-step *in pari delicto* analysis. We found that the traditional analysis' reliance upon public policy as the deciding factor in application of the doctrine was too likely to encourage inconsistent results. *Id.* at 550. We worried that a court might favor a litigant depending merely upon "which point of view—which 'public policy'—we chose.... [I]t would be difficult to

characterize our choice as other than arbitrary. In another action another court might with equal justification make another choice." *Id.* at 551. We were concerned that "the decision which [party] should be favored would depend upon which policy were chosen, and that choice would be essentially arbitrary." *Id.*[6]

In place of the two-step analysis, we relied in *Feld* upon the general principle that our law will not allow recovery when an action is grounded in illegal behavior. *Id.* at 552. We reasoned that, although they acted upon advice of the appellees, the appellants still chose to act in an illegal manner. *Id.* at 549. Because the appellants' conduct was immoral and illegal, and because the action was based upon that conduct, the appellants could not be permitted to proceed.[7] *Id.* at 552. We stated:

> The reason no court will lend its aid to an action grounded upon immoral or illegal conduct is that "the law will not suffer itself to be prostituted." Were we to aid appellants-confessed perjurers-in their attempt to recover compensatory and punitive damages in excess of $250,000, we should indeed "suffer [the law] to be prostituted." For we should reward appellants, with a great deal of

---

6. *See Feld,* 458 A.2d at 550:

> "[Public policy] is a very unruly horse, and once you get astride you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when other points fail." *Quoting Richardson v. Mellish,* 130 Eng. Rep. 294, 303 (1824), Burrough, J. (footnote omitted).

7. The *Feld* court did allow the appellants to pursue their breach of contract claim, which sought recovery of legal fees paid to the appellees. Reasoning that the appellees had violated their professional obligations through their own illegal or immoral conduct, the court allowed the appellants to seek recovery should they be able to prove their allegations.

*Id.* at 554. Our Court recognized that the decision to allow recovery of attorney fees left it open "to a charge of inconsistency: while saying that we will not aid appellants, we yet permit them to recover the fees they paid." *Id.* However, we reasoned:

> On the allegations of the complaint, both appellants and appellees have acted immorally and illegally. We wish to aid *none* of them, and we have come as close as we can to achieving that result. While appellants will have been aided if they recover the fees they paid appellees, this aid will be very limited. For appellants may recover only the fees they paid....

*Id.* at 554–55 (emphasis in original, footnote omitted).

money, for their criminal conduct; we should soften the blow of the fines and sentences imposed upon them; and we should encourage others to believe that if they committed crimes on their lawyers' advice, and were caught, they too might sue their lawyers and be similarly rewarded.

*Id.* (citation omitted).

■■■ To apply our *Feld* precedent in this case, we must first determine whether Appellant engaged in illegal activity. The trial court took judicial notice of Appellant's criminal conviction. Our law provides:

[When considering preliminary objections,] a court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court. The general rule against taking judicial notice when considering preliminary objections in the nature of a demurrer is subject to limited exceptions. It is appropriate for a court to take notice of a fact which the parties have admitted or which is incorporated into the complaint by reference to a prior court action.

*Styers v. Bedford Grange Mut. Ins. Co.,* 900 A.2d 895, 899 (Pa.Super.2006). Further, "proof of a defendant's conviction [is] conclusive evidence of the crime for which he was convicted." *Harter,* 562 A.2d at 333 (citing *Hurtt v. Stirone* [416 Pa. 493], 206 A.2d 624 (Pa.1965)).

■ In his complaint, Appellant detailed his indictment, trial, and conviction. Complaint 16–18 ¶¶ 89–106. Appellant also pled that part of his sentence required him to pay restitution to Erie Insurance and State Farm. *Id.* at 19–20 ¶¶ 108–116. It was therefore appropriate for the trial court to take notice of the federal criminal proceedings against Appellant. It was perforce appropriate as well for the trial court to take notice of the federal court's determination that Appellant devised a scheme to defraud Erie Insurance, acted with specific intent to commit fraud, and used the mail in furtherance of that fraud. T.C.M. at 7. We find no error of law in the trial court's conclusion that Appellant engaged in illegal activity. We think it self-evident that to do otherwise would require us to supplant and reject decisions rendered in a federal criminal case by the United States District Court and United States Court of Appeals. We lack authority to do so.

Appellant contends that *Harter* bars application of *in pari delicto.* In *Harter,* the plaintiff had been convicted of a mail fraud scheme in which the plaintiff allegedly had set fire to property and then sought to recover the ensuing insurance proceeds. *Harter,* 562 A.2d at 331–32. Following her criminal conviction, the plaintiff filed a civil action seeking to recover those proceeds. *Id.* at 331. The question before our Court was whether "conviction on an indictment for mail fraud which includes an allegation of arson bars any recovery on a related fire insurance policy." *Id.,* We concluded that the criminal conviction could be given preclusive effect only if the issue of the arson had been resolved in the criminal proceeding. *Id.* at 335. Because a determination that the plaintiff committed arson was not necessary for the conviction for mail fraud, we held that the trial court erred in finding that the jury had determined that the plaintiff set the fire. *Id.* at 336.

We find that *Harter* does not avail Appellant. First, Pennsylvania law bars recovery on a fire insurance policy when the claimant is convicted of arson. *Id.* at 333. Accordingly, in *Harter,* we determined that neither the trial court nor this Court was called upon to apply the doctrine of *in*

*pari delicto.* Instead, we determined that an arson conviction alone would be deemed sufficient to bar the plaintiff's recovery. Second, we relied upon collateral estoppel, not *in pari delicto,* in weighing whether the criminal conviction barred the civil suit.

The *Feld* analysis requires the trial court to determine whether the civil action is grounded in Appellant's illegal conduct. In the instant case, the trial court considered *Harter* in determining "whether [Appellant's] criminal verdicts of mail fraud were based on elements that include [Appellant's] defrauding of Erie Insurance and State Farm in order to obtain the funds now being sought in this civil action." T.C.M. at 6. Reviewing the verdict slip from Appellant's criminal trial, the trial court determined that the federal jury returned a verdict that specifically found Appellant guilty of mail fraud. The trial court concluded that, because the civil suit sought to recover the restitution imposed as part of Appellant's sentence, the issue underlying the civil suit was grounded in the illegal conduct for which the federal jury convicted Appellant at his criminal trial. T.C.M. at 7.

We discern no error in the trial court's application of *Feld.* Appellant's civil suit necessarily was grounded in the very same conduct (i.e., representations to, and interactions with, insurance personnel) that the federal trial and appellate courts deemed violative of the United States Criminal Code. The trial court here correctly concluded that this circumstance precluded Appellant from proceeding on his civil claim in our state forum. To rule otherwise would effectively allow Appellant to relitigate the questions already passed upon by the federal jury (and reviewed by the federal trial and appellate courts), and violate our common law rule that "no court will lend its aid to a man who grounds his

action upon an immoral or illegal act." *Feld,* 458 A.2d at 548 (citations omitted). In sustaining Erie Insurance's preliminary objections to all counts pled against it, the trial court did not err.

Appellant's second issue asserts that the trial court erred in finding that he did not state a valid fraud claim against Erie Insurance. Appellant's third challenge relates to his claim of bad faith against Erie Insurance. The proper dismissal, on *in pari delicto* grounds, of all claims against Erie Insurance renders these second and third challenges moot.

Nonetheless, in briefing his second issue, Appellant argues as well that he stated a valid fraud claim against State Farm. Appellant's Brief at 30. Appellant does not develop this claim, except to state that the trial court erred in finding that Appellant did not allege State Farm "fraudulently uttered a misrepresentation." *Id.* Appellant contends that the misrepresentation need not have been uttered. *Id.*

State Farm responds that Appellant did not adequately plead a fraud claim against it. Specifically, State Farm counters that Appellant did not plead that State Farm made a representation intended to mislead Appellant, or that Appellant relied upon any representation by State Farm. State Farm's Brief at 6. The trial court agreed with State Farm on both points. T.C.M. at 8.

A grant of a demurrer is proper when the pleading is legally insufficient. *Weiley v. Albert Einstein Med. Center,* 51 A.3d 202, 208 (Pa.Super.2012). In considering a demurrer, the trial court must evaluate the sufficiency of the facts as pled. *Id.* We must determine whether Appellant sufficiently alleged the elements of fraud. Those elements are:

(1) A representation; (2) which is material to the transaction at hand; (3) made

falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance.

*Weston v. Northampton Pers. Care, Inc.,* 62 A.3d 947, 960 (Pa.Super.2013). "Averments of fraud or mistake shall be averred with particularity." Pa.R.C.P. 1019(b).

 In his complaint, Appellant avers that State Farm asked for and received medical authorizations from Appellant following the accident. Complaint at 3 ¶ 13. State Farm did not interview Appellant, nor did it request an independent medical evaluation. *Id.* at 4 ¶¶ 18–19. Appellant received a $50,000 settlement from State Farm and signed a release. *Id.* at 5 ¶ 26. Appellant averred that State Farm made misrepresentations to the court and jury during Appellant's criminal trial, and also submitted a false victim impact statement. *Id.* at 32–33 ¶¶ 178–81. Appellant alleged that the government relied upon State Farm's misrepresentations, and further alleged that the government's reliance on those statements harmed Appellant. *Id.* at 33 ¶¶ 182–84.

Appellant has not sufficiently pled fraud. He has not alleged that State Farm made any misrepresentation to Appellant.[8] What Appellant *has* alleged is that State Farm deceived the federal government, jury, and court. *See* Complaint at 31–33 ¶¶ 170–84. But he was required to plead with particularity that State Farm deceived *him.* This he has failed to do. As the trial court correctly stated:

> The Complaint failed to state a *prima facie* case of fraud against State Farm and Erie Insurance because it failed to

plead that either defendant had made a misrepresentation to [*Appellant* ], and it failed to plead that [*Appellant* ] reasonably relied upon that misrepresentation. For a *prima facie* case of fraud, the *recipient* of the misrepresentation must be the one to reasonably rely upon the misrepresentation and to be damaged as a proximate cause of that reliance. *See Elia v. Erie Ins. Exchange* [398 Pa.Super. 433], 581 A.2d 209, 211–12 (Pa.Super.1990) (citations omitted). The Complaint does not allege that the recipient of the misrepresentation was the individual or entity damaged as a proximate cause of reasonable reliance upon the misrepresentation. Therefore, the Complaint failed to state a cause of action for fraud against Erie Insurance or State Farm.

Trial Court Opinion, 4/25/2012, at 2–3 (italics in original). The trial court did not err in finding Appellant's fraud claim against State Farm legally insufficient, and in sustaining State Farm's demurrer.

 In his fourth issue, Appellant challenges the dismissal of the breach of contract claim he asserted against State Farm. Appellant argues that the release he signed for State Farm was a contract. The release provided that State Farm would pay Appellant $50,000 in settlement of Appellant's claims. Appellant contends that State Farm breached that contract when it sought the return of the $50,000 as restitution. Appellant offers no case law to support this theory. Appellant's Brief at 37–38.

State Farm claims that it satisfied its obligation under the release when it paid Appellant $50,000. State Farm asserts that, notwithstanding the release, nothing

---

**8.** Nor has Appellant averred that he relied justifiably upon any statements by State Farm. To the contrary, Appellant pleads that

the federal government relied upon State Farm's "fraudulent misrepresentations." Complaint at 33 ¶ 182.

prevented it from seeking restitution in a later criminal case against Appellant. State Farm's Brief at 8.

The trial court found that Appellant did not aver that State Farm had breached any duty under the purported contract, and that "State Farm cannot breach its contract by accepting funds the Court has ruled it is entitled to receive." T.C.M. at 9.

■ To adequately plead breach of contract, a complaint must allege the existence of the contract, a breach of a duty imposed by the contract, and damages that result from that breach. *Gorski v. Smith*, 812 A.2d 683, 692 (Pa.Super.2002). Appellant pled that the release constituted a contract between State Farm and Appellant. Complaint at 34 ¶ 186. Appellant averred that State Farm breached a duty, and damaged Appellant, when it sought restitution in the amount of $50,000. *Id.* at 34 ¶ 189–90.

■ While we accept Appellant's averments of fact as true for purposes of reviewing preliminary objections, "[c]onclusions of law ... are not admitted by a demurrer." *Higgins v. Clearing Mach. Corp., Div. of U.S. Indus., Inc.*, 344 Pa.Super. 325, 496 A.2d 818, 819 (1985). Whether State Farm breached a duty imposed by contract is a legal conclusion. *Mellon Bank, N.A. v. Nat'l Union Ins. Co. of Pittsburgh, PA*, 768 A.2d 865, 869 (Pa.Super.2001) ("A legal conclusion is a statement of a legal duty without stating the facts from which the duty arises. A statement of the existence of a fact could be a legal conclusion if the fact stated is one of the ultimate issues in the proceeding."). We must, therefore, examine the factual averments to determine whether they support the conclusion.

Appellant alleged as follows concerning the release:

26. The terms of the aforementioned release include the following:

a. $50,000 was paid by or on behalf of Amber and Brian Cooper;

b. [Appellant] released Amber and Brian Cooper from any and all liability of any kind whatsoever, which he may have [*sic*] in the future by any reason of any bodily injury or the consequences thereof, known or unknown, foreseen or unforeseen, arising out of the accident in question;

c. The acceptance of the consideration was in full accord and satisfaction of the disputed claims against Amber and Brian Cooper;

d. The release was a complete release agreement;

e. The release was executed "without reliance upon any statement or representation of the persons or parties released, or by their representative, concerning the nature and extent of my claims or damages or legal liability therefore; and that the acceptance of this consideration set forth is in full accord and satisfaction of the disputed claims against Amber and Brian Cooper for which no admission of liability is made."

f. The release did not terminate any claims for underinsured motorists and benefits from [Appellant's] motor vehicle insurer, which was [Erie Insurance].

Complaint at 5 ¶ 26. On the facts averred, Appellant has not pointed to any obligation that State Farm did not perform under the release. State Farm's duty was to pay $50,000. It did so. Appellant did not allege that the release prevented State Farm from seeking restitution. Therefore, Appellant did not plead sufficiently that State Farm breached its contract.

The trial court did not err in dismissing that claim.

 Finally, Appellant argues that the trial court erred in dismissing the claim for unjust enrichment that he asserted against State Farm. Appellant contends that, when State Farm sought and obtained an order for $50,000 in restitution, it was unjustly enriched. Appellant argues that it was unjust for State Farm to accept the restitution claim because State Farm knew that it was not defrauded by Appellant. Appellant's Brief at 38–39.

State Farm responds that it cannot be unjustly enriched by monies recovered pursuant to a court order. State Farm also argues that, because it has not yet received any of the funds, it has not been enriched, unjustly or otherwise. State Farm's Brief at 9–11. The trial court agreed with both of State Farm's arguments. T.C.M. at 9.

 Our court previously has explained:

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is *unjust*.

*Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa.Super.2008) (emphasis in original). "We may not make finding of unjust enrichment ... where a written or express contract between parties exists." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.1999). Here, Appellant has alleged a written contract. Appellant averred that, although he is liable to pay $50,000 to State Farm, State Farm is not entitled to the money. Complaint at 35 ¶¶ 193–94. Appellant did not aver that State Farm accepted and retained $50,000 from Appellant. Nor did Appellant adequately plead that any benefit State Farm was ordered to receive would be unjust.

State Farm is entitled to receive restitution pursuant to a court order. The appropriate method to challenge a court order is through an appeal. Appellant availed himself of this remedy: he appealed his conviction and sentence to the United States Court of Appeals for the Third Circuit. That Court affirmed.[9] It was not error for the state trial court to conclude that this final disposition in the federal courts precluded Appellant's unjust enrichment claim.

As Appellant did not plead unjust enrichment sufficiently, the trial court did not err in sustaining State Farm's preliminary objections.

Order affirmed. Jurisdiction relinquished.

---

9. *Joyce v. United States*, 373 Fed.Appx. 172 (3d Cir.2010).