J-A03022-20

2020 PA Super 154

| | |
|---|---|
| DALE E. ALBERT, INDIVIDUALLY AND AS THE ADMINISTRATOR OF THE ESTATE OF CODY M. ALBERT, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SHEELEY'S DRUG STORE, INC. AND ZACHARY ROSS | |
| Appellees | No. 853 MDA 2019 |

Appeal from the Order Entered April 25, 2019
In the Court of Common Pleas of Lackawanna County
Civil Division at No: 2016-5903

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

OPINION BY STABILE, J.:                                    **FILED JUNE 30, 2020**

Appellant, Dale Albert, individually and as administrator of the estate of Cody M. Albert, deceased, appeals from the order entered April 25, 2019, granting Sheeley's Drug Store, Inc.'s ("Sheeley's") motion for summary judgment.  We affirm.

The trial court summarized the factual and procedural background as follows.

> [Appellant] commenced this action by way of writ of summons on October 17, 2016.  In his complaint, [Appellant] alleges three (3) counts, count 1 – negligence, count II – wrongful death, and count III – survival action.  In count I, [Appellant] asserts a claim of negligence against [Sheeley's].  Specifically, [Appellant] alleges Sheeley's allowed co-defendant, Zachary Ross, to pick up a prescription for Fentanyl [a controlled substance], which had been prescribed to his mother, a cancer patient.  Mr. Ross, and the decedent, Cody Albert (hereinafter "[D]ecedent"), had been

> friends for a few years. Mr. Ross and the decedent both ingested a Fentanyl patch, and the decedent subsequently died from drug overdose. On November 30, 2018, Sheeley's filed a motion for summary judgment. After careful consideration of the case law, relevant statutes, submissions of the parties, and oral argument heard on the motion, [the trial court] granted that motion.

Trial Court Opinion, 8/29/19, at 1-2 (footnote omitted) (slightly edited).

Several additional facts deserve mention. In the months leading up to the decedent's death, Ross and the decedent frequently ingested OxyContin and marijuana. One week before the decedent's death, he told Ross that he was experiencing withdrawal symptoms from opiates. Appellee's Motion For Summary Judgment ("Motion"), ex. B., Ross dep., 7/19/18, at 14-17, 40. The decedent referred to himself as "just a fuckin[g] drug addict with no money." Motion, ex. C, text messages.

On March 16, 2016, the decedent, a student at Kutztown State University, informed his parents that he was not feeling well. The decedent's father drove to Kutztown and transported the decedent to a Scranton hospital, where the decedent complained of flu-like symptoms. Despite his complaints, he resumed texting with Ross about drugs and money while was in the hospital, and the pair schemed about ways to obtain illicit drugs. *Id.*

On March 17, 2016, following his discharge from the hospital, which included a prescription for Percocet, the decedent returned to his home. Motion, ex. E, Dep of Linda Albert, at 49. The decedent visited his family practitioner that day and drove himself to the drugstore to have his prescriptions filled, including the Percocet, which he took. *Id.* at 52-53.

- 2 -

Ross's mother had a prescription at Sheeley's Pharmacy for Fentanyl because she had multiple myeloma. Pretending to be his mother, Ross called Sheeley's to place an order for Fentanyl. On the evening of March 17, 2016, Ross and the decedent texted one another about getting to the pharmacy before 9:00 p.m. so that Ross could pick up the prescription. Motion, ex. C, text messages. The decedent drove Ross to Sheeley's and waited outside in his car while Ross entered the pharmacy and obtained the drugs. Motion, ex. I, Ross's statement to police. Ross and the decedent then traveled to Ross's house, where the decedent ingested Fentanyl and fell asleep on the living room couch. Later that night, Ross attempted to wake the decedent up, but he was unresponsive. He was pronounced dead at the hospital.

The trial court granted summary judgment to Sheeley's under the *in pari delicto* doctrine. Following the grant of summary judgment, Appellant took this appeal.[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant argues the trial court erred in granting Appellee's motion for summary judgment based on the *in pari delicto* defense. According to

---

[1] During the pleadings stage of this case, Sheeley's filed a complaint joining Ross as an additional defendant and alleging that Ross was liable over to Appellant. In order for Appellant to take this appeal, Appellant and Sheeley's stipulated that Appellant would discontinue his claims against Ross. Based on this stipulation and the order granting summary judgment to Sheeley's, we construe this appeal as being from a final order under Pa.R.A.P. 341.

Appellant, the defense is not applicable here because he did not engage in anything that was immoral or illegal. We disagree.

Our standard of review of an order granting a motion for summary judgment is well settled.

> [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the [trial court].

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted). "To the extent that [an appellate court] must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record." *Id.*

Additionally,

> [i]n evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. . . . Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-62 (Pa. Super. 2013).

The *in pari delicto* defense applies when the plaintiff is "an active, voluntary participant in the wrongful conduct or transaction(s) for which [he] seeks redress" and "bear[s] substantially equal or greater responsibility for

the underlying illegality as compared to the defendant." ***Official Committee Of Unsecured Creditors of Allegheny Health Educ. and Research Foundation v. PriceWaterhouseCoopers, LLP***, 989 A.2d 313, 329 (Pa. 2010) ("**AHERF**") (citation and internal punctuation omitted).  This common law doctrine "is an application of the principle that no court will lend its aid to a man who grounds his actions upon an immoral or illegal act." ***Joyce v. Erie Ins. Exchange***, 74 A.3d 157, 162 (Pa. Super. 2013).

Pennsylvania courts have applied the *in pari delicto* doctrine in tort actions.  ***See AHERF***, 989 A.2d at 312 (*in pari delicto* applies in tort action by corporation against auditors except in "scenarios involving secretive collusion between officers and auditors to misstate corporate finances to the corporation's ultimate detriment"); ***Joyce***, 74 A.3d at 162-66 (motorist, who had been convicted in federal court of mail fraud and money laundering in connection with insurance proceeds he had collected from automobile insurers following his collision with another car, was barred by *in pari delicto* doctrine from proceeding on bad faith and fraud claims against insurer, because motorist's suit necessarily was grounded in the very same conduct (*i.e.*, representations to, and interactions with, insurance personnel) that the federal courts deemed violative of United States Criminal Code).

We are not aware of any Pennsylvania decision where a court has dismissed a tort action with facts similar to this case concerning the use of ill-gotten drugs from a pharmacy under the *in pari delicto* doctrine.  Other

jurisdictions, however, have applied the *in pari delicto* rule (or similar doctrines) to bar claims analogous to the claim brought here by Appellant. *See Inge v. McClelland*, 725 Fed. Appx. 634 (10th Cir. 2018) (district court properly dismissed plaintiffs' action alleging that pharmacist filled thousands of their prescriptions for powerful narcotic pills knowing that plaintiffs were abusing them and that no medical necessity existed for these medications; even if pharmacist engaged in illegal conduct, breached his duties to plaintiffs, and benefited financially from his scheme, "[w]e see no error in the district court's inferring that [pharmacist's] conduct cannot be said to have been a greater cause of [plaintiffs'] injuries than [plaintiffs'] own unlawful behavior"); *Foister v. Purdue Pharma, L.P.*, 295 F.Supp.2d 693, 704-05 (E.D. Ky. 2003) (plaintiffs who procured and used OxyContin illegally could not recover in tort action against pharmaceutical company, because plaintiffs inevitably had to rely on their illegal actions to establish their claims); *Price v. Perdue Pharma Co.*, 920 So.2d 479, 481–86 (Miss. 2006) (plaintiff's malpractice claims against doctors and pharmacy were barred by wrongful conduct rule because his injuries resulted from his own illegal conduct in misrepresenting his medical history to obtain multiple prescriptions for controlled substance, OxyContin); *Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So.2d 452, 454–55 (Fla. Dist. Ct. App. 2007) (wrongful conduct doctrine prohibited recovery by estate against pharmacy for failure to properly safeguard controlled substances, where decedent voluntarily ingested OxyContin stolen from the

pharmacy); **Orzel v. Scott Drug Co.**, 449 Mich. 550, 537 N.W.2d 208, 217–18 (Mich. 1995) (plaintiff's negligence claim against pharmacist for honoring her husband's fraudulent prescriptions, which led to his death, was barred by wrongful conduct rule, because his injuries resulted from his own wrongful conduct of obtaining pills through co-workers and illegal prescriptions under various names that were filled by pharmacists); **Pappas v. Clark**, 494 N.W.2d 245 (Iowa Ct. App. 1992) (plaintiff's cause of action against his doctor and pharmacist was barred by his own illegal conduct in using cocaine and prescription drugs).  These decisions provide persuasive authority for the trial court's decision in the present case to enter summary judgment against Appellant.  **Farese v. Robinson**, 222 A.3d 1173, 1188 (Pa. Super. 2019) (although Superior Court is not bound by decisions from courts in other jurisdictions, we may use such decisions for guidance to degree we find them useful, persuasive, and not incompatible with Pennsylvania law).

The thrust of Appellant's argument is that the record is devoid of anything suggesting that Decedent engaged in illegal or immoral activity.  Appellant claims that the ingestion of controlled substances is not illegal, and Decedent did not have any role in the fraud perpetrated by Ross.  We disagree.

Decedent had a history of abusing drugs together with Ross.  On the day of Decedent's death, Ross telephoned Sheeley's and ordered Fentanyl by pretending to be his mother, who had a prescription for Fentanyl due to her bout with multiple myeloma.  Decedent and Ross communicated about Ross's

- 7 -

need to get to the pharmacy by 9:00 to obtain this prescription. Decedent then drove Ross to Sheeley's and waited in the car while Ross obtained the Fentanyl inside the pharmacy. This evidence demonstrates that Decedent took part in Ross's scheme to obtain this deadly controlled substance.

Appellant also fails to address, let alone rebut, a critical fact relied upon by the trial court: Decedent possessed a controlled substance, Fentanyl, in violation of 35 P.S. § 780-113(a)(16). As the trial court observed,

> Fentanyl, a classified Schedule I controlled substance, is regulated by the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act. This Act's purpose is to deter individuals from using illegal drugs, not reward the unlawful possession of a controlled substance. Here, the [D]ecedent and Mr. Ross were friends and had a history of illegally ingesting controlled substance together, as evidenced by the text messages between them. The [D]ecedent knowingly ingested a Fentanyl patch that was not prescribed to him. Tragically, he died as a result. Therefore, [plaintiff cannot] recover for a harm caused by illegal drug use.

Trial Court Opinion, 8/29/19, at 11.

Guided by the trial court's analysis and by the authorities gathered above, we conclude that the trial court properly granted summary judgment to Sheeley's under the *in pari delicto* doctrine. No court will lend its aid to a man who grounds his actions upon an immoral or illegal act. ***Joyce***, 74 A.3d at 162. By participating in the scheme to obtain the Fentanyl, and by illegally possessing the Fentanyl at Ross's house in violation of 35 P.S. § 780-113(a)(16), the Decedent was "an active, voluntary participant in the wrongful conduct or transaction(s) for which [Appellant] seeks redress" and "bear[s]

substantially equal or greater responsibility for the underlying illegality as compared to [Sheeley's]." ***AHERF***, 989 A.2d at 329.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/30/2020