J-A04040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KARIM ANTOINE YAZBEK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HILL INTERNATIONAL, INC. | : | No. 1808 EDA 2021 |

Appeal from the Order Entered August 12, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  201101528

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MAY 12, 2022**

Karim Yazbek appeals from the order sustaining the preliminary objections of his former employer, Hill International, Inc. ("Hill"), and dismissing his complaint sounding in breach of contract and common law wrongful termination. We affirm.

This case stems from an employment relationship between Yazbek and Hill. We take the following statement of facts from the operative complaint and documents attached to it.[1] We also recite some of the parties' statements in their pleadings on preliminary objections, to give context. Hill is a Delaware corporation with headquarters in Philadelphia and operations

---

[1] **See Alatrista v. Diamond Club**, 267 A.3d 1257, 1259-60 (Pa.Super. 2021).

in Qatar;[2] the events surrounding Yazbek's claim allegedly occurred in Qatar.[3] Yazbek is a Canadian citizen who has had two periods of employment with Hill. He ended the first voluntarily in 2011.[4]

Hill rehired Yazbek in February 2016 as Vice President/Country Manager at its Qatar location.[5] Yazbek and Hill entered into a written employment contract at that time ("First Contract"). The First Contract provided that any disputes between Yazbek and Hill had to be resolved "exclusively" by the courts of Qatar and would be governed by Qatari law.[6] Yazbek also agreed in the First Contract to execute any standard form labor contract required by Qatari law.[7] According to Hill, he followed through on that promise when the parties entered into a second contract a short while later, in March 2016 ("Second Contract").[8] The Second Contract stated that

---

[2] Hill disputes that it is the entity that employed Yazbek. **See** Hill's Preliminary Objections to Plaintiff's Second Am. Comp., ¶ 1. That question is not before us. We refer to Appellee by the name appearing in the caption and by the short form "Hill" without intending to express an opinion on the resolution of this question.

[3] **See** Reply in Further Support of Hill's Preliminary Objections to Plaintiff's Second Am. Comp.at 2; Second Am. Comp., ¶ 2.

[4] Yazbek's Answer in opposition to Defendant's Preliminary Objections to Plaintiff's Second Am. Comp., ¶1; Second Am. Comp., ¶¶ 9-13 & Ex. B at 1.

[5] **Id.** ¶ 14.

[6] **Id.**, Ex. A, ¶¶ 4.1.

[7] **Id.**, Ex. A, ¶ 15.

[8] **Id.** ¶ 17. **See also** Hill's Preliminary Objections to Plaintiff's Second Am. Comp. ¶ 5.

its provisions were governed by Qatari law, which would serve as basis for resolving any dispute between the parties "unless the conditions of the contract include more favourable [sic] advantage to" Yazbek.[9]

Yazbek was later injured on the job in May 2017, when a company vehicle drove over his left foot, resulting in arterial thrombosis.[10] Yazbek alleges that Hill "was on notice of the incident as a claim was promptly filed,"[11] but Hill allegedly "never compensated him for his workplace injury."[12]

Thereafter, Hill purportedly told Yazbek that he should cease operational duties on July 1, 2019.[13] According to Yazbek, "There was a final agreement documented but not signed between [Yazbek] and [Hill] that is dated August 1, 2019." ("Unsigned Agreement").[14] The Unsigned Agreement alleged and offered Yazbek "voluntary redundancy" and specified that Yazbek's last day of employment would be December 31, 2019.[15] However, on September 25, 2019, Hill informed Yazbek that his last day would be

---

[9] Second Am. Comp., Ex. B ¶ 7(d).

[10] *Id.* ¶¶ 33-35.

[11] *Id.* ¶ 36.

[12] *Id.*

[13] *Id.* ¶ 27.

[14] *Id.* ¶ 18; *see also* Second Am. Comp., Ex. C.

[15] *Id.* ¶ 19.

December 24, 2019, and he would only be paid "entitlements" up to and including that date.[16]

Yazbek filed the instant suit on November 17, 2020. After two rounds of preliminary objections, Yazbek filed the amended complaint at issue on March 29, 2021 ("Second Amended Complaint"). The Second Amended Complaint had two counts: one for breach of all three contracts referenced above and one for common law wrongful termination. Yazbek attached a copy of the Unsigned Agreement to the Second Amended Complaint. The Unsigned Agreement has multiple comments in the margins that, *inter alia*, ask for clarification, seek removal of a clause, and indicate that a term is "not in line with Qatari law."[17] The Unsigned Agreement contains a signing requirement: "Notwithstanding that this Agreement is marked without prejudice, it will, when signed by both Parties named below and dated, become open and binding."[18] It also contains a clause that would require that any dispute be submitted to mediation "after which it may be referred to the competent courts of Doha[, Qatar]."[19]

Hill again filed preliminary objections that included a demurrer to both counts. Ultimately, the trial court issued an order sustaining Hill's

---

[16] *Id.* ¶¶ 20-21.

[17] *Id.* Ex. C at 2-4.

[18] *Id.* Ex. C, ¶ 16.

[19] *Id.* Ex. C, ¶ 15.

preliminary objection to legal sufficiency and dismissed the Second Amended Complaint. The order stated that on the one hand, "If the [Unsigned Agreement] is valid, which is the basis of [Yazbek's] [Second Amended Complaint], this matter is subject to the forum selection clause dictating this matter be heard in Qatar." The order continued that on the other hand, "If the [Unsigned Agreement] is not valid, [Yazbek] has failed to raise a proper cause of action."[20] Yazbek filed the instant timely appeal and both Yazbek and the trial court complied with Pa.R.A.P. 1925.

Yazbek raises the following issues for our review:

1) Whether the trial court erred in finding that, if the [Unsigned Agreement] is valid, this matter is subject to forum selection clause dictating that this matter be heard in Qatar?

2) Whether the trial court erred in finding that, if the [Unsigned Agreement] is not valid, [Yazbek] has failed to state a cause of action for breach of contract and/or wrongful termination?

Yazbek's Br. at 7.

We review an order sustaining preliminary objections "to determine whether the trial court committed an error of law." *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 162 (Pa.Super. 2013) (quoting *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa.Super. 2011)). We apply the same standard on appeal as the trial court used when it entertained the objections. *Id.* "When considering preliminary objections, all material facts set forth in the

---

[20] Order, 8/11/2021, n.1.

challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Id.* (quoting *Feingold*, 15 A.3d at 941). The court should examine the allegations of the complaint and statements in documents and exhibits attached to it. *Alatrista*, 267 A.3d at 1259-60. A court may sustain preliminary objections that seek the dismissal of a cause of action "only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." *Joyce*, 74 A.3d at 162 (quoting *Feingold*, 15 A.3d at 941).

In his first issue, Yazbek claims the trial court misapprehended his argument regarding the Unsigned Agreement. (He makes no argument regarding the First Contract or the Second Contract.) He claims that he recognizes that the Unsigned Agreement is unenforceable. Instead, he claims that an oral contract existed between himself and Hill and that some of the terms of the Unsigned Agreement memorialize terms of the oral agreement. He asserts that the court erred by dismissing the case at the preliminary objection stage because he could have proven the existence of the verbal contract through discovery. He claims that the parties verbally agreed to additional compensation due to his injury and that his final date of employment was to be December 31, 2019. He also avers that he never verbally agreed to resolve all employment disputes in accordance with Qatari law only.

"A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a

breach of a duty imposed by the contract and (3) resultant damages."
***Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.***, 895 A.2d 595, 600 (Pa.Super. 2006).

> Where the existence of an informal contract is alleged, it is essential to the enforcement of such an informal contract that the minds of the parties should meet on all the terms[,] as well as the subject matter. If anything is left open for future negotiation, the informal paper cannot form the basis of a binding contract.

***GMH Assocs., Inc. v. Prudential Realty Group***, 752 A.2d 889, 900 (Pa. Super. 2000) (citation and quotation marks omitted).

Yazbek has not cited any legal authority to support his contention that a verbal agreement was formed in this case. Nor has he identified for us the specific allegations of the Second Amended Complaint that he claims support a finding of an enforceable oral contract. Hence, this issue is waived. ***See Wirth v. Commonwealth***, 95 A.3d 822, 837 (Pa. 2014) ("[W]here an appellate brief fails to . . . develop [an] issue in [a] meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him") (citation omitted).

Even if it were not waived, his argument would fail. The allegations of the Second Amended Complaint regarding any alleged oral contract are sparse. We find only two paragraphs that conceivably could refer to the alleged oral agreement and even they do not do so explicitly. The two paragraphs read:

18. There was a final agreement documented but not signed between Plaintiff and Defendant that is dated August 1, 2019. (Please see the August 1, 2019 contract attached as "Exhibit C").

19. This contract offers voluntary redundance and contemplated a termination of employment date of December 31, 2019.

Second Am. Comp. ¶¶ 18-19.

Neither of these paragraphs contain any allegations to support a finding of the formation of an oral contract. Furthermore, we agree with the trial court that the Unsigned Agreement itself indicated that a "meeting of the minds" never occurred between the parties. *See GMH Assocs.*, 752 A.2d at 900. The notes throughout the margins of the Unsigned Agreement fatally undermine Yazbek's contention that the Unsigned Agreement memorialized a preexisting verbal agreement that the parties intended to be enforceable. What is more, the Unsigned Agreement specifies that it will become "binding" only when signed and dated by both parties. This seemingly precludes enforcement of any oral contract. Yazbek does not attempt to explain away the contradiction. Instead, Yazbek chooses the terms of the Unsigned Agreement he believes should be enforceable, *e.g.*, his date of termination being December 31, 2019, and ignores this unfavorable term. The trial court did not err by finding Yazbek's allegations insufficient to support his contract claim. *Joyce*, 74 A.3d at 162. Yazbek's first issue warrants no relief.

In his second issue, Yazbek disputes the sustaining of the preliminary objection to his wrongful termination count. He claims that his termination

was in retaliation for the workers' compensation claim he filed in Qatar and allegedly constitutes a violation of Pennsylvania law. He claims his injury developed slowly, which accounts for the delay in his termination from the 2017 injury until his termination in 2019. Yazbek admits that he never filed a workers' compensation claim in Pennsylvania but argues that Hill had notice of his claim in Qatar.

Once again, we find Yazbek's argument unavailing. The sole authority Yazbek cites is **Shick v. Shirey**, 716 A.2d 1231 (Pa. 1998). **Shick** does concern a common law cause of action for wrongful termination for a retaliatory discharge in response to a workers' compensation claim. However, **Shick** is readily distinguishable. It concerned an at-will employee who filed a Pennsylvania workers' compensation claim. Here, Yazbek's employment relationship with Hill is contractual and governed by the First and Second Contracts, which each specify that any dispute arising between the parties is subject to Qatari law. Moreover, Yazbek admits he never filed a Pennsylvania workers' compensation claim. As such, we conclude that the trial court aptly sustained Hill's preliminary objection to the legal sufficiency of Yazbek's wrongful termination claim. Therefore, Yazbek's second issue on appeal also must fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2022