## Thattayathu v. Trikha

348

C.P. of Lackawanna County, No. 12 CV 3208

*Paul G. Batyko*, for plaintiff.
*Paul J. Walker*, for defendants Kallickal and Mani.

*Christopher P. Arnone* and *Siddharth G. Dubal*, for defendants Trikha and Subh-Laxmi Corp.

NEALON, *J.*, October 1, 2013—Plaintiff contributed $65,000.00 to a closely held cooperation that was formed to acquire a gas station and convenient store business, and after that proffered purchase proved to be unsuccessful, plaintiff sued the corporation's majority shareholders and the intended seller for compensatory and punitive damages. The jury found the majority shareholders liable for breach of contract and awarded $40,000.00 in damages against them, and further awarded $125,000.00 in compensatory damages against the seller on an unjust enrichment theory. The jury did not find the seller liable in tort, nor did it award punitive damages against any defendant. The seller filed a post-trial motion seeking judgment in his favor on the unjust enrichment claim, and alternatively requesting either a new trial on damages or a remittitur of the award against him to $25,000.00. Plaintiff filed his own post-trial motion seeking to recover pre-verdict interest and post-verdict interest on the jury awards.

Since the trial record contains sufficient evidence that no express contract existed between plaintiff and the seller, that plaintiff delivered funds directly to the seller, and that the seller accepted and retained those funds under circumstances where it would be inequitable for the seller to keep that money, the seller's motion for judgment notwithstanding the verdict will be denied. However, once the jury found the majority shareholders liable for $40,000.00 and concluded that the seller had not committed a tort and was not liable for punitive damages, the maximum amount of compensatory damages that the jury could award against the seller was

$25,000.00. Therefore, the seller's motion for remittitur will be granted and plaintiff will be afforded the option of accepting a remitted award of $25,000.00 against the seller or submitting to a new trial on damages against the seller only. Additionally, plaintiff's post-trial motion for pre-verdict and post-verdict interest on his compensatory damages awards will be granted.

## I. FACTUAL BACKGROUND

This litigation arises out of an ill-fated attempt by plaintiff, Joy Thattayathu ("Thattayathu"), and defendants, Sogi Kallickal ("Kallickal") and Mathew Mani ("Mani"), to purchase a gas station and convenient store business from defendant, Manmohan Trikha ("Trikha"), and in the process, to secure a long-term lease of real estate located at 300 Meadow Avenue, Scranton. In 2009, Trikha owned and operated six gas stations and convenient stores in the Lackawanna County, including a gas station and convenient store at 300 Meadow Avenue. (Transcript of proceedings ("T.P.") on 4/16/13 at pp. 183, 206, 220, 233; T.P. 4/17/13 at p. 146). The land at 300 Meadow Avenue was owned by Lake Street Acquisition Corp., and Trikha's wholly owned company, defendant, Subh-Laxmi Corp ("Subh-Laxmi"), leased that property from Lake Street Acquisition Corp., and operated its gas station and convenient store at that site. (T.P. 4/17/13 at pp. 122-124, 139).

In late 2009, Mani approached Trikha regarding the possible purchase of the gas station and convenient store business, and the concomitant procurement of a long term lease of the land, at 300 Meadow Avenue. (*Id.* at pp. 120, 124-125). Mani indicated that he was soliciting potential investors to raise the necessary funds for such

a transaction, and Trikha and Mani eventually agreed to a purchase price of $290,000.00, with $150,000.00 of that amount being "owner financed" by Trikha. (*Id.* at pp. 116-117, 125-126, 132). Mani discussed this prospective transaction with Kallickal who, in turn, contacted his cousin, Thattayathu, to solicit his investment in a newly formed company which would purchase Trikha's business and acquire a twenty year lease to operate that business at the 300 Meadow Avenue location. (T.P. 4/16/13 at pp. 3, 7-8, 19-20; T. P. 4/17/13 at pp. 20-21).

To that end, Kallickal, Mani, Thattayathu and Jose Makil formed JMJMS, Inc. ("JMJMS"), with Thattayathu and Jose Makil each acquiring two hundred (200) shares of stock and Kallickal and Mani each obtaining two hundred fifty five (255) shares of stock in JMJMS. (T.P. 4/15/13 at pp. 158-159; T.P. 4/16/13 at pp. 27-28, 62, 144-145). Kallickal served as the president, secretary and treasurer of JMJMS. (T.P. 4/16/13 at pp. 25-26). In addition to borrowing smaller sums of money from friends to generate the funds to purchase Trikha's business and to obtain a long term lease of 300 Meadow Avenue, Kallickal and Manu advised Thattayathu to contribute $65,000.00 toward that venture. (T.P. 4/15/13 at pp. 203-204; T.P. 4/16/13 at pp. 9, 41-42). Kallickal and Mani each agreed to contribute $75,000.00, and continued to borrow funds from friends in order to raise that $150,000.00. (T.P. 4/16/13 at pp. 35-38, 166-167).

It is undisputed that in early 2010, Thattayathu contributed $65,000.00 in the following four payments: $10,000.00 to Mani; $25,000.00 to Trikha; $5,000.00 to Mani; and $25,000.00 to Kallickal. (T.P. 4/15/13 at pp. 120-121, 130-131, 136, 195-197; T.P. 4/16/13 at pp. 16-

352

17, 34, 58-59, 65, 132; T.P. 4/17/13 at pp. 12-14, 24, 31, 38, 93-94). Kallickal and Mani provided Trikha with $50,000.00 in funds that they had borrowed from friends, and when coupled with Thattayathu's $25,000.00 payment to Trikha, delivered $75,000.00 in total funds to Trikha.[1] (T.P. 4/15/13 at pp. 125, 129, 133, 136; T.P. 4/16/13 at pp. 16-17, 128-129, 178, 184, 197-198; T.P. 4/17/13 at pp. 69-60). In exchange for the payment of that amount, Trikha's company, Subh-Laxmi, agreed to enter into a twenty year lease agreement with Kallickal's company, 5's, Inc. ("5's"), which, in turn, would sub lease the property to JMJMS so that the gas station and convenient store could be operated there. (T.P. 4/15/13 at pp. 138-140, 157, 160-162, 165, 198-199; T.P. 4/16/13 at pp. 64, 80-81, 139-140, 143-144, 146-149, 163; T.P. 4/17/13 at pp. 80-81).

Unbeknownst to Thattayathu, Kallickal and Mani had used the $40,000.00 that they had received from Thattayathu to repay those individuals that had loaned them money to form JMJMS, but who had not received shares of stock in JMJMS. (T.P. 4/16/13 at pp. 10, 12, 17-18, 25, 33, 60-61, 89, 99-100, 165-166). Additionally, Kallickal and Mani discovered in February 2010 that the property owner, Lake Street Acquisition Corp., had defaulted on its mortgage with Fidelity Deposit and Discount Bank, and that a Sheriff's Sale of the property had been scheduled for June 1, 2010. (T.P. 4/15/13 at pp. 140-144, 166, 170). JMJMS and Trikha attempted to negotiate and consummate a temporary lease of Trikha's business for the period from March 15, 2010, to May 31,

---

1. By agreement of the parties, the $50,000.00 check was made payable to Trikha's solely owned company, SMS Petroleum Corp. (T.P. 4/15/13 at pp. 126, 128; T.P. 4/16/13 at pp. 33-34; T.P. 4/17/13 at p. 71).

2010, but were unable to reach an agreement. (T.P. 4/15/13 at pp. 140-144, 150, 166, 173).

Due to their concerns that Trikha and Subh-Laxmi would be unable to transfer a twenty year lease for the Meadow Avenue real estate if that property was sold to a third party at the scheduled Sheriff's Sale, Thattayathu, Kallickal and Mani agreed that Trikha would utilize the funds that he had received from those JMJMS shareholders in order to purchase the property at the Sheriff's Sale. (T.P. 4/15/13 at pp. 146-147, 149, 192-195; T.P. 4/16/13 at pp. 20-21, 24-25, 89-90, 187-188; T.P. 4/17/13 at 112-113). Trikha agreed that if he was not the successful bidder for 300 Meadow Avenue at the Sheriffs Sale, he would refund the $75,000.00 to JMJMS and its shareholders. (T.P. 4/15/13 at pp. 144, 149, 192-195; T.P. 4/16/13 at pp. 20-21, 24-25, 89-90; T.P. 4/17/13 at pp. 113-114). Unfortunately, Trikha was not the high bidder for the property at the Sheriffs Sale, (T.P. 4/16/13 a pp. 97-98, 100, 108, 178-179; T.P. 4/17/13 at pp. 16, 26, 97-98, 133), and was unable to transfer a long term lease to JMJMS since Subh-Laxmi's lease ceased in July 2010. (T.P. 4/17/13 at pp. 104-105, 135).

Prior to the Sheriff's Sale on June 1, 2010, Trikha had advised Kallickal, Mani and JMJMS's counsel, Raymond Ferrario, Esquire, that he would return the $75,000.00 which Kallickal, Mani and Thattayathu had provided to him. (T.P. 4/15/13 at pp. 152-153; T.P. 4/17/13 at pp. 113-114). After Trikha failed to do so, JMJMS's shareholders and counsel made repeated written and oral demands for the return of those funds, but to no avail. (T.P. 4/15/13 at pp. 152-156, 173-174, 186-187; T.P. 4/16/13 at pp. 90-91, 210; T.P. 4/17/13 at pp. 77, 105-106). Consequently,

Thattayathu commenced this action against Trikha, Subh-Laxmi, Kallickal and Mani seeking to recover compensatory and punitive damages. (Docket entry no. 1).

At the time of trial, Kailickal and Mani acknowledged that Thattayathu is entitled to be repaid the $65,000.00 that he delivered to Trikha, Mani and Kallickal in connection with JMJMS's aborted acquisition of Trikha's business and Subh-Laxmi's lease, but both men maintained that they are unable to return those funds to Thattayathu until Trikha refunds the $75,000.00 that Kallickal, Mani and Thattayathu provided to him. (T.P. 4/16/13 at pp. 29-31,37-40,42,90,95, 104, 126-127,131,134-135, 170-171). During his trial testimony, Trikha offered three different explanations as to why he has not repaid the $75,000.00 to Kallickal, Mani and Thattayathu. First, he claimed that the $75,000.00 payment "was a non-returnable deposit" on the purchase of his business and the acquisition of a long term lease. (T.P. 4/16/13 at p. 189). However, Trikha later testified that the $75,000.00 payment "wasn't [a] deposit" and instead was for the cost of repairs that were made to the gas station and convenient store with the alleged consent of Kallickal, Mani and Thattayathu. (*Id* at pp. 199-201, 206-207, 211). After JMJMS's counsel rebutted that claim during his testimony, (T.P. 4/17/13 at pp. 106-110), Trikha was recalled as a witness by his counsel, revised his version of events again, and contended that the $75,000.00 payment represented the aggregate cost of the convenient store inventory and some minor repairs that were performed.[2] (*Id.* at pp. 145 — 146).

---

2. Trikha's testimony in that regard was contradicted by Thattayathu's check that Trikha endorsed and deposited and which contained the express notation "gas station deposit." (T.P. 4/17/13 at p. 32).

Thattayathu asserted claims against Kallickal and Mani for breach of contract, breach of fiduciary duty, fraud, and civil conspiracy. (*Id.* at pp. 191-195, 197-198). Thattayathu advanced claims against Trikha for unjust enrichment and civil conspiracy. (*Id.* at pp. 196-198). Thattayathu sought to recover compensatory damages of $65,000.00, and also demanded, in the event that Trikha, Kallickal or Mani were found to be liable in tort, punitive damages from the culpable tortfeasor(s). (*Id.* at pp. 198-200).

The jury found Kallickal and Mani both liable for breach of contract, and awarded damages of $25,000.00 against Kallickal and $15,000.00 against Mani. (*Id.* at p. 229). Although the jury also found Kallickal and Mani liable for breach of fiduciary duty, they awarded no damages for that tortious conduct. (*Id.* at pp. 229-230). The jury further determined that neither Kallickal nor Mani had committed fraud. (*Id.* at pp. 230-231).

With respect to Trikha, the jury found that Trikha had been unjustly enriched by Thattayathu and assessed the value of the benefit conferred upon him as $125,000.00. (*Id.* at p. 231). The jury concluded that Trikha, Kallickal and Mani were not liable for civil conspiracy. (*Id.* at pp. 231-232). Since the jury found that Thattayathu had not suffered any harm as a result of any tortious conduct by Trikha, Kallickal or Mani, it declined to award any punitive damages. (*Id.* at p. 232). Thus, the jury awarded compensatory damages totaling $165,000.00, comprised of breach of contract awards against Kallickal and Mani for $25,000.00 and $15,000.00 respectively, and an unjust enrichment award against Trikha in the amount of $125,000.00. (*Id.*).

Trikha and Subh-Laxmi filed a timely motion for post-trial relief seeking the entry of judgment non obstante verdicto ("JNOV") or the grant of a new trial or remittitur. In their request for JNOV, Trikha and Subh-Laxmi contend that "Thattayathu did not meet his burden of proof with respect to the unjust enrichment claim" since the only lease agreement that was executed identifies Subh-Laxmi and 5S's as the contracting parties. (Docket entry no. 60 at ¶ 2 and p. 7). Trikha and Subh-Laxmi alternatively seek a new trial on the ground that "[t]he verdict of $125,000.00 against defendant Trikha for unjust enrichment was excessive" and "based upon prejudice or sympathy of the jury." (*Id.* at ¶¶ 4-5). Trikha has also presented a motion seeking to remit the jury award against him to $25,000.00. (*Id.* at ¶¶ 6-7).

Thattayathu has filed a post-trial motion requesting the assessment of pre-verdict interest at the rate of 6% per annum from the date that repayment of his $65,000.00 became due through the date of the verdict on April 17, 2013. (Docket entry no. 62 at ¶¶ 12, 14, 16). Thattayathu further seeks to recover post-verdict interest at the statutory rate of 6% from April 17, 2013, through the date of final payment. (*Id.* at ¶¶ 13, 15, 17). At the time of oral argument on the parties' post-trial motions on August 14, 2013, counsel for Trikha and Subh-Laxmi stated that in the event that Trikha's motion for remittitur was granted, their motion for a new trial would be deemed withdrawn.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

When considering a request for JNOV, the evidence must be viewed in the light most favorable to the verdict

winner, who must be afforded the benefit of every reasonable inference arising from the trial evidence, while rejecting all unfavorable testimony and inferences. *Empire Trucking Co. v. Reading Anthracite Coal Company*, 71 A.3d 923, 932 (Pa. Super. 2013). "A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant." *Zitney v. Appalachian Timber Products, Inc.*, 72 A.3d 281, 293 (Pa. Super. 2013). "With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Hall v. Episcopal Long Term Care.* 54 A.3d 381, 395 (Pa. Super. 2012), *app. denied*, 69 A.3d 243 (Pa. 2013).

"There is a two step process that a trial court must follow when responding to a request for a new trial." *Huber v. Etkin*, 58 A.3d 772, 776 (Pa. Super. 2012), *app. denied*, 68 A.3d 909 (Pa. 2013). First, the trial court must decide whether one or more mistakes occurred at trial. *Braun v. Wal-Mart Stores. Inc.*, 24 A.3d 875, 891 (Pa. Super. 2011); *White v. Behlke*, 2009 WL 1904102, at * 15 (Lacka. Co. 2009), *aff'd*, 15 A.3d 523 (Pa. Super. 2010), *app. denied*, 614 Pa. 689, 39 A.3d 991 (2012). Second, if the trial court concludes that a mistake occurred, it must determine whether the mistake is a sufficient basis for granting a new trial. *Locklev v. CSX Transportation, Inc.*, 5 A.3d 383, 388 (Pa. Super. 2010), *app. denied*, 613 Pa. 668, 34 A.3d

358

831 (2011). Under the harmless error doctrine, "[a] new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered some prejudice from the mistake." *Bennett v. A. T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 149-150 (Pa. Super. 2012); *Shields v. Fafard*, 2013 WL 4542263, at * 6 (Lacka. Co. 2013).

## (B) UNJUST ENRICHMENT CLAIM

Trikha first seeks the entry of judgment in his favor under Pa.R.C.P. 227.1(a)(2) with respect to Thattayathu's cause of action for unjust enrichment. Trikha notes that the "[d]octrine of unjust enrichment does not apply where the parties' relationship is founded on an express agreement," and argues that Thattayathu cannot recover under that theory inasmuch as a lease agreement existed between Subh-Laxmi and 5S's. (Docket entry no. 60 at p. 6). Thattayathu submits that when the record is viewed in the light most favorable to him as the verdict winner, sufficient evidence exists to support the jury's unjust enrichment finding against Trikha. (Docket entry no. 64 at p. 7).

Unjust enrichment is considered to be an equitable doctrine. *Com, v. Ortho-McNeil-Janssen Pharmaceuticals. Inc.*, 52 A.3d 498, 512 (Pa. Cmwlth. 2012). "The elements of unjust enrichment are benefits conferred on defendant by plaintiff; appreciation of such benefits by defendant; and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Joyce v.*

*Erie Insurance Exchange*, 2013 WL 3421977, at *10 (Pa. Super. 2013); *Reflection Builders Enterprise. Inc. v, Basile*, 2012 WL 2115694, at * 6 (Lacka. Co. 2012). The plaintiff bears the burden of establishing either that the defendant wrongfully secured the benefit or passively received a benefit that it would be unconscionable to retain. *Ortho-McNeil-Janssen Pharmaceuticals. Inc.*, *supra* (quoting *Com, v. TAP Pharmaceutical Products*, 885 A.2d 1127, 1137 (Pa. Cmwlth. 2005)). In determining whether the doctrine applies, the "focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Joyce, supra*; *Durst v. Milroy General Contracting. Inc.*, 52 A.3d 357, 360 (Pa. Super. 2012).

Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay the plaintiff the value of the benefit that the plaintiff has conferred on the defendant. *Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 52 A.3d at 512; *Durst. 52* A.3d at 360. Thus, "[a] n action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." *Discover Bank v. Stucka*, 33 A.3d 82, 88 (Pa. Super. 2011) (quoting *Sevast v. Kakouras*, 591 Pa. 44, 53 n. 7, 951 A.2d 1147, 1153 n. 7 (2007)). Under the doctrine of unjust enrichment, the implied contract "imposes a duty, not as a result of any agreement, whether expressed or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Metroclub Condominium Association v. 201-59 North Eighth Street Associates. L.P.*, 47 A.3d 137, 148 (Pa. Super. 2012), *app. denied*, 57 A.3d 71 (Pa. 2012); *Discover Bank, supra*. Consequently, a jury "may not make a finding of unjust enrichment... where a written

or expressed contract between the parties exists." *Joyce, supra.*

There is ample evidence in the record to support the conclusion that Thattayathu provided monies to Trikha, that Trikha appreciated that monetary benefit, and that Trikha retained such funds under circumstances where it would be unconscionable or inequitable for him to wrongfully retain those proceeds. (T.P. 4/15/13 at pp. 120-121, 130-131, 136, 195-197; T.P. 4/16/13 at pp. 16-17, 34, 58-59, 65-132; T.P. 4/17/13 at pp. 12-14, 24, 31, 38, 93-94). In fact, Trikha himself admitted under oath that he received and deposited a check from Thattayathu in the amount of $25,000.00. (T.P. 4/16/13 at p. 178). Although Trikha proffered a series of conflicting explanations as to why he has not returned those funds to Thattayathu, (T.P. 4/16/13 at pp. 189, 199-201, 206-207, 211; T.P. 4/17/13 at pp. 145-146), the jury was free to reject that testimony as not credible. *See O'Kelly v. Dawson*, 62 A.3d 414, 419 (Pa. Super. 2013) (questions concerning credibility of witnesses and weight to be accorded the evidence at trial are within the province of the jury, and when considering a motion for JNOV, "we will not substitute our judgment for that of the finder of fact.").

A finding of unjust enrichment cannot survive if an express contract exists between the plaintiff and the defendant. *See Joyce, supra.* The only express agreement that Trikha has identified is the written lease between his company, Subh-Laxmi, and Kallickal's company, 5S's. No express contract ever existed between Thattayathu and Trikha individually, nor did Trikha allege the existence of any such agreement at trial. Therefore, based upon the foregoing proof that Trikha has wrongfully retained

a monetary benefit that Thattayathu conferred upon him, the law implied a contract which requires Trikha to pay Thattayathu the value of the benefit conferred.

The jury was presented with sufficient evidence from which it could conclude that Trikha was unjustly enriched by the money that he received from Thattayathu. Trikha has not established that the law "requires a verdict in his favor" or "that a verdict for [Trikha] was beyond peradventure." As a result, his request for JNOV with regard to the jury's finding of unjust enrichment will be denied.

### (C) REMITTITUR REQUEST

Trikha alternatively argues that "[i]f this Court nonetheless finds that the evidence was sufficient to establish unjust enrichment of Trikha from Plaintiff, a remittitur is proper in this case." (Docket entry no. 60 at p. 9). Trikha posits that the question submitted by the jury during its deliberations relative to the elements of a civil conspiracy claim reflected the jury's desire to require Trikha to pay "$100,000.00 in punitive damages without any legal basis." (*Id.* at ¶ 5). Since Thattayathu sought compensatory damages of $65,000.00, and the jury found Kallickal and Mani liable for $40,000.00 of that sum, Trikha maintains that the unjust enrichment verdict against him must be remitted to $25,000.00. (*Id.* at p. 9). Thattayathu counters "that the jury weighed and considered which credible evidence to rely upon in assessing damages and determining that a verdict for $125,000.00 against Trikha was appropriate." (Docket entry no. 62 at p. 11).

Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant

*Rettger v. UPMC Shadyside*, 991 A.2d 915, 932 (Pa. Super. 2010), *app. denied*, 609 Pa. 698, 15 A.3d 491 (2011); *Busy Bee. Inc. v. Wachovia Bank. N.A.*, 2006 WL 723487, at \*65 (Lacka. Co. 2006), *aff'd*, 932 A.2d 248 (Pa. Super. 2007), *app. denied*, 598 Pa. 778, 959 A.2d 318 (2008). "A remittitur should fix the highest amount any jury could properly award, giving due weight to all the evidence offered." *Neal v. Bavarian Motors. Inc.*, 882 A.2d 1022, 1028 (Pa. Super. 2005), *app. denied*, 589 Pa. 722, 907 A.2d 1103 (2006); *Busy Bee, Inc., supra*. The question presented by a motion for remittitur "is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption." *Renna v. Schadt*, 64 A.3d 658, 671 (Pa. Super. 2013) (quoting *Rettger*, 991 A.2d at 932). If the verdict "bears a reasonable resemblance to the damages proven," the reviewing court should not disturb it "merely because we might have awarded different damages." *McManamon v. Washko*, 906 A.2d 1259, 1285 (Pa. Super. 2006), *app. denied*, 591 Pa. 736, 921 A.2d 497 (2007).

In connection with Thattayathu's claim that Trikha, Kallickal and Mani engaged in outrageous tortious behavior warranting the imposition of punitive damages, Thattayathu introduced evidence of the counsel fees and litigation costs that he has incurred, the interest expenses that he has paid on a home equity loan used to finance his $65,000.00 contribution, lost revenue that he has sustained in his machinist business due to litigation and trial appearances, and travel and lodging expenses that he has incurred in traveling from his home in California to

Lackawanna County for discovery depositions and trial. (T.P. 4/17/13 at pp. 9, 14-19). The jury was instructed that it could award punitive damages only if it found one or more of the defendants liable in tort and further concluded that the culpable defendant(s) engaged in outrageous behavior. (*Id.* at pp. 188-191, 198-199). The only jury verdict interrogatories addressing potential tort liability on the part of Trikha were those questions concerning civil conspiracy. The jury was instructed that a civil conspiracy claim requires, inter alia, proof of "a combination of two or more persons acting with a common purpose to do an unlawful act, or to do a lawful act by unlawful means or for an unlawful purpose." (*Id.* at pp. 186-187).

Nevertheless, during their deliberations, the jurors submitted a question which stated: "[c]an only one person be judged as having engaged in an overall civil conspiracy, or must it be two or more persons?" (*Id.* at pp. 227-228). The jurors were advised to reference the written jury instructions that had been distributed to them for their use during deliberations pursuant to Pa.R.C.P. 223.1(c)(4), and which stated that a civil conspiracy requires two or more persons. (*Id.* at p. 228). Since the jury did not find any of the defendants liable for civil conspiracy, nor did they conclude that any defendant acted outrageously, it declined to award punitive damages. (*Id.* at pp. 231-232).

The maximum amount of compensatory damages that Thattayathu could recover in this case was $65,000.00. The jury found Kallickal and Mani liable for breach of contract, and awarded Thattayathu damages of $25,000.00 against Kallickal and $15,000.00 against Mani. Although a defendant may be held jointly and severally liable in tort, and thereby required to pay the full amount of the verdict

if that defendant is found "liable for not less than 60% of the total liability apportioned to all parties," 42 Pa.C.S. § 7102(a.1)(3)(iii), Pennsylvania law does not recognize joint and several liability for damages awarded by a jury for breach of contract. *See Kohn v. School District of City of Harrisburg*, 2012 WL 1598096, at * 6 (M.D. Pa. 2012) ("A right to contribution does not exist on a breach-of-contract claim because the School District cannot establish joint tortfeasor status on such a claim."); *Castle Cheese. Inc. v. MS Produce. Inc.*, 2008 WL 4372856, at * 42 (W.D. Pa. 2008) ("Since the enactment of [Pennsylvania's Uniform Contribution Among Tortfeasors Act], courts have consistently held that Pennsylvania does not recognize a right of contribution among defendants in breach of contract cases."); *Unique Technologies. Inc. v. Micro-Stamping Corp.*, 2003 WL 21652284, at * 3 (E.D. Pa. 2003) ("Unique cannot assert a legally permissible cause of action under Pennsylvania state law for contribution on a breach of contract case."). *See also Sehl v. Neff*, 26 A.3d 1130, 1134 (Pa. Super. 2011) (tortfeasor and plaintiff's own automobile insurer, against whom plaintiff had asserted breach of contract claim for uninsured motorist benefits, could not be held jointly and severally liable for tort and contract damages relating to the accident). Once the jury had awarded Thattayathu $40,000.00 in compensatory damages against Kallickal and Mani, it could only award $25,000.00 in compensatory damages against Trikha.

However, the jury found Trikha liable for $125,000.00 in damages for unjust enrichment. Trikha makes a plausible argument that the jury's civil conspiracy question during deliberations reflected its desire to somehow find Trikha liable in tort and responsible for $100,000.00 in punitive

damages. But, unless the jury found either Kallickal or Mani liable for engaging in a civil conspiracy with Trikha, it could not find Trikha liable in tort and award punitive damages against him. Rather, the "highest amount" it could award against Trikha, following the breach of contract awards totaling $40,000.00, was $25,000.00. For that reason, the jury award of $125,000.00 against Trikha shocks the sense of justice and suggests that the jury was influenced by partiality or prejudice towards Trikha.

Since the maximum amount of compensatory damages that the jury could have awarded against Trikha was $25,000.00, Trikha's motion for remittitur will be granted. Under Pennsylvania law governing remittitur, Thattayathu has the option of accepting that remittitur to an award of $25,000.00 or, in the alternative, choosing to undergo a new trial on damages with respect to Trikha only. *See Refuse Management Systems, Inc. v. Consolidated Recycling and Transfer Systems. Inc.*, 448 Pa. Super. 402, 421-422, 671 A.2d 1140, 1149 (1996): *Osborne v. Neville*, 102 Lacka. Jur. 132, 160 (2000), *aff'd*, 797 A.2d 381 (Pa. Super. 2002), *app. denied*, 569 Pa. 694, 803 A.2d 735 (2002). If Thattayathu files a remittitur of $100,000.00, reflecting a reduction in his unjust enrichment award against Trikha to $25,000.00, within twenty days of the date of this Order, Trikha's motion for a new trial on damages will be denied. However, if Thattayathu declines to file such a remittitur within the next twenty days, Trikha's motion for a new trial on damages will be granted.[3] *See Osborne*, 102 Lacka. Jur. at 166-167.

---

3. In light of our grant of Trikha's motion for remittitur, Trikha's motion for a new trial is deemed withdrawn, as per the representation of Trikha's counsel at the time of oral argument, and will be dismissed as moot.

## (D) PRE-VERDICT AND POST-VERDICT INTEREST

Thattayathu has filed a post-trial motion seeking to recover pre-verdict and post-verdict interest at the rate of 6% per annum on the jury awards that he secured against Trikha, Kallickal and Mani. (Docket entry no. 62). Trikha, Kallickal and Mani did not file an answer to Thattayathu's post-trial motion, nor have they submitted briefs in opposition to his request for interest.

Pennsylvania has adopted the "Interest as Damages" standard set forth in the Restatement (Second) of Contracts § 354 (1981), which was formerly found in the Restatement (First) of Contract § 337(a) (1932). *See Fernandez v. Levin*, 519 Pa. 375, 379, 548 A.2d 1191, 1193 (1988). Section 354(1) of the Restatement provides that "[i]f the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled." *TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 614 Pa. 549, 566-567, 39 A.3d 253, 263 (2012) (quoting Restatement (Second) of Contract § 354(1)). "Section 354 distinguishes between interest due on an obligation to pay a definite sum, which is recoverable as a matter of right under Subsection 354(1), and interest on losses incurred as a consequence of a breach of a promise to pay, which is subject to discretion under Subsection 354(2)." *Cresci Construction Services. Inc. v. Martin*, 64 A.3d 254, 262 (Pa. Super. 2013).

In applying § 354(1) of the Restatement, the

Supreme Court of Pennsylvania has stated that interest is automatically recoverable in certain contract actions regardless "of when it is demanded, [citation omitted], or whether it is demanded." *Fernandez*, 519 Pa. at 380, 548 A.2d at 1193. Such an award of interest does not depend upon the discretion of the court, *TruServ Corp.*, 614 Pa. at 568, 39 A.3d at 264, and is available as a matter of right "even though a *bona fide* dispute exists as to the amount of the indebtedness." *Younkin v. Nationwide Insurance Co.*, 807 A.2d 275, 281 (Pa. Super. 2002). The rationale underlying an award of prejudgment interest is "that the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party."[4] *Portside Investors. L.P. v. Northern Ins. Co. of New York*, 41 A.3d 1, 15 (Pa. Super. 2011).

"The purpose of damages in a breach of contract case is to return the parties to the position they would have been in but for the breach." *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. 2003), *app. denied*, 578 Pa. 701, 852 A.2d 313 (2004). The same reasoning is applicable to unjust enrichment claims seeking payment of a definite sum of money, such that pre-verdict interest is likewise recoverable on an unjust enrichment award. *See*

---

4. Pennsylvania Rule of Civil Procedure 238 governing delay damages in civil actions for "bodily injury, death or property damage" does not apply to breach of contract claims for pecuniary loss, *see Sun Pipeline Co. v. Tri-State Telecommunications. Inc.*, 440 Pa. Super. 47, 60-61, 655 A.2d 112, 118-119 (1994), *app. denied*, 542 Pa. 673, 668 A.2d 1136 (1995), or to fraud actions seeking recovery of compensatory damages. *See Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 616 (3d Cir. 1991), *cert. den.*, 504 U.S. 955 (1992). The recovery of prejudgment interest in the latter type of commercial tort claim is governed by *Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72 , 263 A.2d 336 (1970), and its progeny.

*Sack v. Feinman*, 489 Pa. 152, 163,413 A.2d 1059, 1065 (1980) ("Hence, any claim based upon unjust enrichment or restitution, rather than upon compensation or damages, not only permits pre-judgment interest, but also permits an award of compound interest."); *Kaiser v. Old Republic Insurance Company*, 741 A.2d 748, 755 (Pa. Super. 1999) ("...it is nonetheless clear that pre-judgment interest may be awarded when a defendant holds money or property which belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment."). Pursuant to 41 P.S. § 202, the legal rate of interest is six percent per annum.

Thattayathu sought compensatory damages in a fixed, ascertainable sum (i.e., $65,000.00), as a result of which he is entitled to recover pre-verdict interest as a matter of right. *See TruServe Corp.*, 614 Pa. at 568, 39 A.3d at 265 ("Thus, even where the terms of a contract do not expressly provide for the payment of interest, a nonbreaching party has a legal right to recover interest, as damages, on a definite sum owed under the contract."); *Cresci Const. Services. Inc.*, 64 A.3d at 264-265. In his post-trial motion, Thattayathu seeks to recover interest from the dates that Mani, Trikha and Kallickal first received funds from him on December 28, 2009, January 19, 2010, and February 23, 2010, respectively. (Docket entry no. 62 at ¶¶ 12, 14, 16). However, defendants were not obligated to repay Thattayathu's $65,000.00 until Trikha failed to purchase the 300 Meadow Avenue property on June 1, 2010, and the long-term lease transaction was definitively aborted. Consequently, in 2010, Thattayathu is entitled to pre-verdict interest for the 213 day period from June 1, 2010, through December 31, 2010. Thattayathu may recover

full years of statutory interest for 2011 and 2012. In 2013, Thattayathu is entitled to recover pre-verdict interest for the 107 day period from January 1, 2013, through the date of the verdict on April 17, 2013.

With regard to Thattayathu's $25,000.00 verdicts against Kallickal and Trikha, pre-verdict interest at 6% per annum yields an interest recovery of $1,500.00 per year, or $4.11 per day. The pre-verdict interest recovery relative to the $15,000.00 award against

Mani is $900.00 per year, or $2.47 per day. As a result, the verdicts against Trikha,

Kallickal and Mani, when molded to reflect pre-verdict interest, will include the following interest recoveries:

| | 2010 | 2011 | 2012 | 2013 | TOTAL |
|---|---|---|---|---|---|
| Trikha ($4.11/day) | $875.43 | $1,500.00 | $1,500.00 | $439.77 | $4,315.20 |
| Kallickal ($4.11/day) | $875.43 | $1,500.00 | $1,500.00 | $439.77 | $4,315.20 |
| Mani ($2.47/day) | $526.11 | $ 900.00 | $ 900.00 | $264.29 | $2,590.40 |

Accordingly, the verdicts against Trikha and Kallickal will be molded to the sums of $29,315.20, while the verdict against Mani will be similarly molded to $17,590.40.

Thattayathu also seeks to recover post-verdict interest on the jury awards from April 17, 2013, to the date of payment. Section 8101 of the Judicial Code provides that "a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict, or from the date of the judgment, if the judgment is not entered upon

a verdict or award." 42 Pa. C.S. §,8101. For purposes of computing post-judgment interest, "judgment and verdict are synonymous, and the date from which interest accrues is the date of the verdict, not the date judgment is finally entered." *Hutchison v. Luddy*, 946 A.2d 744, 750 (Pa. Super. 2008); *Green Valley Dry Cleaners. Inc. v. Westmoreland County Industrial Development Corp.*, 861 A.2d 1013, 1016 (Pa. Cmwlth. 2004). Where the amount of the verdict is adjusted upward by the trial court, interest begins to run on the adjusted amount from the date of the verdict. *Johnson v. Singleton*, 442 Pa. Super. 206, 209, 658 A.2d 1372, 1374 (1995). Thus, since prejudgment interest becomes part of the verdict, and post-judgment interest under 42 Pa. C.S. § 8101 applies to the verdict, post-judgment interest is calculated based upon the verdict as molded to include prejudgment interest. *See Sun Pipeline Co.*, 440 Pa. Super, at 68, 655 A.2d at 122. Not unlike pre-verdict interest in a contract action, post-verdict interest is calculated based upon the legal rate of 6% per year. *See Equitable Gas Company v. Wade*, 812 A.2d 715, 717 (Pa. Super. 2002).

Based upon the foregoing pre-verdict interest calculations, Thattayathu is entitled to 6% interest on his molded verdicts of $29,315.20 against Trikha and Kallickal, as well as his $17,590.40 molded verdict against Mani. Therefore, an order will be entered granting Thattayathu's request for post-verdict interest on those amounts from April 17, 2013, to the date of payment.

## ORDER

And now, this 1st day of October, 2013, upon consideration of the "Notice of Post-Trial Motion of

Defendant Manmohan Trikha and Subh-Laxmi Corp. for Judgment Notwithstanding the Verdict or In the Alternative for a New Trial or Remittitur," "Plaintiff's Post-Trial Motion for an Award of Pre- and Post-Verdict Interest Against the Defendants Manmohan Trikha, Sogi Kallickal and Matthew Mani," the memoranda of law submitted by the parties, and the oral argument of counsel on August 14, 2013, it is hereby ordered and decreed that:

1. The motion of defendants, Manmohan Trikha and Subh-Laxmi Corp., for judgment notwithstanding the verdict is denied:

2. The motion of defendant, Manmohan Trikha, for remittitur relief is granted to the extent that the compensatory damages award against him exceeds $25,000.00. If plaintiff, Joy P. Thattayathu, files a remittitur of $100,000.00, reflecting a reduction in his unjust enrichment award against defendant, Manmohan Trikha, to $25,000.00, within twenty (20) days of the date of this order, the post-trial motion of defendant, Manmohan Trikha, for a new trial on damages will be denied.

3. If plaintiff, Joy P. Thattayathu, fails to accept and file such a remittitur within the next twenty (20) days, a new trial will be granted solely on the issue of compensatory damages against defendant, Manmohan Trikha;

4. In light of the grant of the motion of defendant, Manmohan Trikha, for remittitur, the motion of defendant, Manmohan Trikha, for a new trial is dismissed as moot, as per the stipulation of counsel for defendant, Manmohan Trikha, at the time of oral argument;

5. Plaintiff's motion for an award of pre-verdict interest

372

is granted, and the verdicts are molded in the following manner to reflect awards of pre-verdict interest: $29,315.20 against defendant, Manmohan Trikha; $29,315.20 against defendant, Sogi Kallickal, and $17,590.40 against defendant, Matthew Mani; and

6. Plaintiff's motion for post-verdict interest is granted and the verdict against defendant, Manmohan Trikha, in the molded amount of $29,315.20, the verdict against defendant, Sogi Kallickal, in the molded amount of $29,315.20, and the verdict against defendant, Matthew Mani, in the molded amount of $17,590.90, shall bear post-verdict interest at the rate of 6% per annum from April 17, 2013, until the date of payment.