**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1883 & 24-2042
_____

BRIDGET MCMAHON and JAMES RICE, on behalf of himself
and all others similarly situated


v.


CHIPOTLE MEXICAN GRILL, INC., trading and doing business as CHIPOTLE
            Appellant in No. 24-2042

            James Rice,
            Appellant in No. 24-1883
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:20-cv-01448)
District Judge: Honorable William S. Stickman, IV
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 14, 2025

Before: PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Opinion filed: June 6, 2025)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FREEMAN, *Circuit Judge*.

James Rice appeals three orders—one denying his motion for class certification, another granting summary judgment in favor of Chipotle Mexican Grill, Inc. ("Chipotle"), and a third granting final judgment in favor of Chipotle. We will affirm the class-certification order, affirm in part and reverse in part the summary-judgment order, and affirm in part and vacate in part the final judgment in favor of Chipotle.

Chipotle cross-appeals the denial of its motion to exclude expert testimony that was considered during the class-certification stage. Because we will affirm the class-certification order, we will dismiss Chipotle's cross-appeal as moot.

**I**

In 2020, the United States experienced a coin shortage due to the COVID-19 pandemic. *See Is There a Coin Shortage in the United States?*, Board of Governors of the Federal Reserve System (last updated Aug. 27, 2024), https://www.federalreserve.gov/faqs/why-do-us-coins-seem-to-be-in-short-supply-coin-shortage.htm [https://perma.cc/GE6U-FW5S]. During the coin shortage, James Rice and Bridget McMahon (Rice's former co-plaintiff) separately visited Chipotle restaurants in Pennsylvania.

During McMahon's visit in August 2020, she placed her order, scanned a code on her phone to earn Chipotle Rewards points, and tendered a $20 bill as payment. The cashier told McMahon that he would be unable to provide her with change in coins. McMahon said "okay" and accepted the portion of her change that could be tendered in

2

bills. After receiving her food, she left the restaurant without raising any objection or inquiry about the missing coins.

Rice visited a different Chipotle restaurant in October 2020. He was a frequent Chipotle customer, and he did not look at the menu prices when he ordered. After placing his order, the cashier told him the price was $10.55, and he tendered a $20 bill as payment. The cashier gave Rice only bills—exactly $9.00—as change. When Rice inquired about the 45-cents-worth of coins missing from his change, the cashier said her manager instructed her not to give out coins that day. Rice then asked whether the cashier was allowed to keep a customer's change, and the cashier again invoked her manager's instructions. Not wanting to cause a commotion, Rice accepted only the portion of his change that could be tendered in bills and left with his items and his receipt showing that he should have received $9.45 in change.

Shortly after her August 2020 visit to Chipotle, McMahon filed a putative class action against Chipotle in Pennsylvania state court. Chipotle removed the case to federal court, and McMahon amended her complaint to include Rice as a class representative. The operative complaint raised several state-law claims: misappropriation, conversion, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), breach of contract, and unjust enrichment.

Following discovery, the plaintiffs moved for certification of the following class: "all individuals who, on or after January 1, 2020, purchased any item(s) from a Chipotle . . . restaurant in Pennsylvania using cash, and were given change of less than the difference between the amount of cash tendered and the purchase price of the item(s)."

3

App. 5.  The class-certification motion relied in part on the testimony of data analyst Matthew Pohl—testimony that Chipotle moved to exclude.  The District Court denied Chipotle's motion to exclude Pohl's testimony.  However, despite considering Pohl's opinions, the District Court denied the plaintiffs' class-certification motion for failure to satisfy the ascertainability requirement.  Chipotle then successfully moved for summary judgment on the plaintiffs' individual claims, and the District Court entered final judgment in favor of Chipotle.

Rice timely appealed the class-certification and summary-judgment orders, and Chipotle timely cross-appealed the order denying its motion to exclude Pohl's testimony.  McMahon did not appeal.

## II[1]

Because Rice sought class certification under Federal Rule of Civil Procedure Rule 23(b)(3), he had to show that his proposed class satisfies the requirements enumerated in Rule 23.  Fed. R. Civ. P. 23(a), (b)(3).  He also had to show that his proposed class was at the time "readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

To satisfy the ascertainability requirement, a plaintiff need not actually identify class members; rather, he "need only show that class members *can* be identified." *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (cleaned up).  To do so, he must show

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d).  We have jurisdiction over the appeal and cross-appeal pursuant to 28 U.S.C. § 1291.

by a preponderance of the evidence that: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (cleaned up). A class is not ascertainable "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" *Marcus*, 687 F.3d at 593. The district court must conduct a "rigorous analysis" of the evidence and arguments and resolve all relevant factual or legal disputes. *Byrd*, 784 F.3d at 163 (citation omitted); *Marcus*, 687 F.3d at 591. We review the district court's class certification order for abuse of discretion, "which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact." *Byrd*, 784 F.3d at 161 (citation omitted). We review the legal standard applied by the district court *de novo*. *Id.*

Although Rice defined his proposed class with reference to objective criteria, the District Court concluded that Rice did not identify a reliable method of identifying class members. Rice's proposed method of identifying class members was two-fold. First, the parties would identify the cash transactions within the relevant time period based on Chipotle's electronic data. The data includes transaction-level information, including the amount of the sale, type of tender, date and time, restaurant, receipt number, and cashier's identity. However, Chipotle's data does not reveal whether the customer received the correct change. Therefore, the parties would determine who was shortchanged by cross-referencing the data with one or more of the following:

5

(a) customer receipts, (b) information in customer complaints, (c) Chipotle Rewards membership information, (d) restaurant security surveillance footage, and (e) affidavits.

The District Court rejected this method as unreliable. It determined that the surveillance footage would not identify the shortchanged customers. Even if the parties determined that a particular customer was owed coin change and did not receive coins, the District Court explained that the video footage would not indicate whether a cashier rounded the change up or rounded the purchase price down to avoid shortchanging that customer. The District Court also determined that affidavits of purported class members could not be corroborated by Chipotle's records, so a mini trial would be needed to evaluate the credibility of each affiant. Thus, it concluded that "a 'straightforward yes-or-no review' of Chipotle's records cannot definitively determine whether a proposed class member fits within the objective criteria." App. 23 (quoting *Kelly v. RealPage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022) (cleaned up)).

We discern no abuse of discretion. The District Court did not err when it determined shortchanged customers could not be identified using Chipotle's records. Even assuming that cash-paying customers can be identified on video surveillance footage, the record supports the Court's determination that customers who received no coins were not necessarily shortchanged. *See Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 261–62 (3d Cir. 2020) (seeing no clear error in the district court's findings of fact, which were supported by the record). And while Chipotle Rewards numbers link some customers to particular cash transactions, that information does not reveal whether those customers were shortchanged. Hence, Rice attempts to rely in part on affidavits

from purported class members. But the record supports the District Court's determination that those affidavits cannot be corroborated through objective sources.

Rice argues that the District Court's class-certification order conflicts with our decision in *Kelly v. RealPage*. But nothing about the District Court's ruling in this case runs afoul of *Kelly*. There, we reiterated that courts may not deem a class unascertainable because identifying class members would require reviewing a large number of individual records within the defendant's possession. *Kelly*, 47 F.4th at 223–25. The District Court here did not base its ascertainability ruling on the volume of individual records the parties would need to review. Instead, it determined that Chipotle's records simply do not contain the information needed to identify class members. It also determined that relying on affidavits from purported class members in these circumstances would require the type of individualized fact-finding that defeats ascertainability. *See id.* at 223–24 (recounting that a class is unascertainable where "either a defendant's records do not contain the information needed to ascertain the class or the records do not exist at all, leading to . . . 'mini-trials'" (citation omitted)). Its decision is consistent with our precedent.

We will affirm the District Court's order denying class certification. Because that ruling moots Chipotle's cross-appeal, we will dismiss the cross-appeal.

**III**

We exercise plenary review of an order granting summary judgment. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material

7

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]e view the underlying facts and all reasonable inferences" from them "in the light most favorable to the party opposing the motion." *Blunt*, 767 F.3d at 265 (citation omitted). Applying this standard, we will affirm the District Court's order granting summary judgment on all but two of Rice's claims. We will reverse the order only insofar as it granted summary judgment in favor of Chipotle on Rice's breach-of-contract and UTPCPL claims.

### A. Tort claims

The District Court correctly ruled that Rice's tort claims (misappropriation and conversion) are barred by Pennsylvania's gist-of-the-action doctrine. That doctrine "prevents a purely contractual duty from serving as the basis for a tort claim." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 216 (3d Cir. 2022) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 65 (Pa. 2014)). "[T]he nature of the duty alleged to have been breached" is the critical factor in determining whether the claim is for tort or breach of contract. *Bruno*, 106 A.3d at 68. If the duty breached was "a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of [a] contract," then the claim is for breach of contract. *Id.* By contrast, when there is a breach of "a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract," the claim is a tort. *Id.*

8

Rice argues that the same occurrence of shortchanging gives rise to both tort and breach-of-contract claims. He relies on our opinion in *SodexoMAGIC*, where we recognized "it is still possible for the same act to breach both a duty under tort law and a contractual duty." 24 F.4th at 217. In *SodexoMAGIC*, we provided the example of a Pennsylvania Supreme Court case holding that "a landlord who promised to repair a defective porch could be subject to tort claims after the porch had collapsed on the tenant because the landlord had a duty to invitees even absent the promise to repair the porch." *Id.* (citing *Bruno*, 106 A.3d at 65–66). But the facts Rice alleges do not support that Chipotle breached any duty other than its contractual promise to provide Rice food in exchange for a sum certain of money. His claims sound in contract and are thus barred by the gist-of-the-action doctrine.

## B. Contract-law claims

Rice brings two contract-law claims: unjust enrichment and breach of contract. Under Pennsylvania law, a plaintiff cannot prevail on unjust enrichment where an express contract exists between the parties. *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 169 (Pa. Super. Ct. 2013). Here, the parties agree that they had an enforceable contract. Therefore, no relief is available under an unjust enrichment theory.

That leaves the breach-of-contract claim. To support this claim, Rice argues that he and Chipotle had a contract to exchange food for the listed price, the contract was memorialized in his receipt, and Chipotle breached the contract when it failed to give him his change in coins (i.e., 45 cents). *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)

9

(stating the claim's three elements: "(1) the existence of a contract . . . [;] (2) a breach of the contract; and[] (3) resultant damages"). According to Chipotle, when the cashier told Rice that he could not receive the coin portion of his change and Rice accepted his food and his change in bills, Rice accepted a modification of the contract. It contends that this modification constitutes a waiver of any claim for breach of the pre-modification contract. The District Court determined that Rice's actions effected a waiver.

A reasonable jury could find otherwise. After Rice received less change than he expected, he asked for his remaining change. When the cashier responded that she was instructed not to give coins as change, he challenged that response. Although he left with his food and without any change in coins, a reasonable jury could find that Rice's words and actions show that intended to obtain compliance with the original contract through an avenue other than a cashier who disclaimed authority to give him his remaining change. That finding would not support an express or implied waiver of his ability to seek compliance. *See Den-Tal-Ez, Inc. v. Siemens Cap. Corp.*, 566 A.2d 1214, 1223 (Pa. Super. Ct. 1989) (discussing express and implied waivers). Therefore, we will reverse the District Court's summary judgment order insofar as it granted summary judgment on the breach-of-contract claim.[2]

---

[2] Chipotle contends that Rice failed to give (and plead that he gave) notice of a breach of contract "within a reasonable time" of discovering the breach, as required under the Pennsylvania Uniform Commercial Code. 13 Pa. Cons. Stat. § 2607(c)(1). But Rice gave notice of a breach when he complained to the cashier during the transaction, and he pleaded those allegations in his complaint.

### C. Unfair trade practices claim

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Cons. Stat. § 201-3. The statute enumerates various unfair or deceptive practices, including false advertising. *Id.* § 201-2(4)(ix). It also includes a catchall provision that reaches "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201-2(4)(xxi). Rice contends that Chipotle violated the UTPCPL by falsely advertising one price for its food but effectively charging him more, and by engaging in an unfair and deceptive practice of tendering a different amount of change than what is indicated on customer receipts.

To prevail on a UTPCPL claim, Rice must prove (among other elements) that he "justifiably relied upon the unfair or deceptive business practice when making the purchasing decision." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021). So to prove justifiable reliance on false advertising, Rice must show "that he purchased [items from Chipotle] because he heard and believed [Chipotle's] false advertising" about the items. *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001). And to prove justifiable reliance on other "deceptive conduct during a consumer transaction that creates a likelihood of confusion or misunderstanding," he must show that he relied on that conduct "to his . . . financial detriment." *Gregg*, 245 A.3d at 649–50.

Rice has not adduced any evidence that he made a purchase from Chipotle *because of* the company's alleged false advertising. He did not even look at the posted

11

menu prices when he placed his order, so he cannot prove that he justifiably relied on false advertising of the price to make his purchase.

By contrast, Rice has adduced evidence supporting a violation of the catchall provision. The cashier told him the price of his order, Rice tendered payment in cash, and he received less than the amount of change he expected. Chipotle did not give Rice notice that he would not receive any coins as change if he paid cash, nor did its cashier explain that she was giving Rice only $9.00 as change rather than the $9.45 in change that was reflected on his receipt. Rice had to question the cashier about the missing 45 cents to learn that he would not receive it. And he left the restaurant with 45 cents less than he expected to receive in change. Based on this evidence, a reasonable jury could find that Chipotle's conduct created a likelihood of confusion or misunderstanding to a reasonable consumer and that Rice relied on that conduct to his financial detriment. Therefore, we will reverse the District Court's order insofar as it granted summary judgment in favor of Chipotle on the claim arising from UTPCPL's catchall provision. We will affirm the order insofar as it granted summary judgment on the claim based on the UTPCPL's false-advertising provision.

\*     \*     \*

For the foregoing reasons, in Appeal No. 24-1883, we will affirm the District Court's order denying class certification; affirm in part and vacate in part the final judgment; and affirm in part and reverse in part the order granting summary judgment in favor of Chipotle, reversing that order only insofar as it grants summary judgment on

12

Rice's breach-of-contract claim and his claim under the UTPCPL's catchall provision.

We will dismiss Chipotle's cross-appeal (Appeal No. 24-2042) as moot.